Miller v. Hubbard et al., Appellants.

112

Argued November 10, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, and FLOOD, JJ. (RHODES, P. J., and MONTGOMERY, J., absent).

*Frank A. Orban, Jr.,* for appellants.

*Norman A. Shaulis,* for appellee.

OPINION BY WATKINS, J., March 18, 1965:

This is an appeal from the judgment and order of the Court of Common Pleas of Somerset County, refusing appellants' motions for judgment non obstante veredicto and for a new trial.

Mr. D. E. Hubbard, the acting president and an agent of Keystone Adjustment Corporation, an independent adjusting firm for insurance claims, while attempting to settle a claim of loss by one Clarence R. Ogline, of Friedens, Somerset County, Pennsylvania, wrote the following letter to Mr. Ogline with copies to Ogline's insurance agent, Miss D. Fern Ogline and the insurance company involved.

"KEYSTONE ADJUSTMENT CORPORATION

J. W. Hubbard, President

Loss Adjusters for Insurance Companies

436 Fourth Avenue.     Pittsburgh 19, Pa.

Atlantic 1-6654

July 23, 1959

Mr. Clarence R. Ogline
R. D. 1
Friedens, Somerset Co., Pa.
Dear Mr. Ogline:

RE: Hailstorm Loss of 5-3-59
Our File No. 230775

We are sorry to have to advise you that from information available the roof on your dwelling was undoubtedly damaged by a hailstorm, which is not covered by your policy. We understand that Ward B. Miller, Jr., suggested that the roof was twisted as a result of a windstorm, which we assure you is a rather silly conclusion and a figment of Mr. Miller's imagination. Within the last three months we have had three claims on which Mr. Miller was the contractor and we have absolutely no confidence in his opinion. Mr. Heiple, with whom you are acquainted, tells us the damage to the roof is definitely due to a hailstorm. In his opinion there is nothing off of the roof and nothing to indicate storm damage other than a possible leak due to the hail.

We would suggest you talk with Mr. Heiple as he is reliable and honest and would not be interested in giving us or anyone a report contrary to the facts. We talked with Mr. Heiple about coming out to see you in connection with Mr. Miller's analysis but he stated he would answer no good purpose as he was convinced the condition had nothing to do with windstorm. We trust therefore you will see the fairness of this decision and if you care to stop and talk with us about the roof we will be glad to do so, but in all the writer's 42 years of experience this is the first time we have ever had a claim for a twisted roof due to windstorm and we know such is not the case.

Yours very truly,
Keystone Adjustment Corporation
s/ D. E. Hubbard (F.C.)
D. E. Hubbard, Adjuster.

DEH :pb

c.c.   Miss D. Fern Ogline
       Stoystown Rd.
       Somerset, Pa.
Branch Offices . . . Altoona, Pa. . . . Johnstown, Pa.
            . . . Oil City, Pa."

The existence of the letter was brought to the attention of the appellee by another insurance agent, who then secured Mr. Clarence D. Ogline's letter and hence this suit was filed.

After a jury trial a verdict for the appellee was found in the sum of $5000.

Appellants claim the letter as published is not defamatory and is not susceptible of a defamatory meaning.

It is for the court, as a matter of law, to determine initially whether or not a publication is defamatory or susceptible of a defamatory meaning. *Cosgrove Studio and Camera Shop, Inc. v. Pane*, 408 Pa. 314, 182 A. 2d 751 (1962). The court below so found as did the jury, and with this we concur.

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement, Torts, §559. "To be defamatory, it is not necessary that the communication actually cause harm to another's reputation or deter third persons from associating or dealing with him. Its character depends upon its general tendency to have such an effect." Restatement, Torts, supra, comment d. "To render a defamatory statement actionable, it is not necessary that the charge be made in a direct, positive and open manner. If the words used, when taken in their ordinary acceptation, convey a degrading imputation, no matter how indirectly, they are libelous, and it matters not how artfully their meaning is concealed or disguised." 33 Am. Jur., Libel and Slander, §9, page 43.

Appellants claim the letter was published upon a qualifiedly privileged occasion. With this we cannot agree. To be privileged it must have been one made upon a proper occasion, from a proper motive, in a proper manner and based upon reasonable or probable cause. *Montgomery v. Dennison*, 363 Pa. 255, 69 A. 2d 520 (1949). A review of the record establishes that appellants did not fulfill their burden. Appellee was in no way involved in the matter being adjusted and this fact was readily available to appellants by a simple review of their file which was not done. There was no reasonable or probable cause for this publication. Restatement of the Law, Torts, §619.

A reading of the publication indicates one which is actionable per se and the appellee is entitled to general damages which include emotional distress, injury to business reputation and recompense for such injuries as would normally flow from the defamation. Restatement, Torts, §621. We must remember that Ward B. Miller, Jr. knew nothing about a loss on the Ogline property and had given no estimate or opinions to anyone concerning it and did not know either Clarence R. Ogline or his wife. Mrs. Ogline, one of the recipients of the letter was asked on direct examination: "What was your understanding of the letter?" To which she replied, ". . . it sounded like he was unreliable". Though, in this case, no evidence of actual damage need have been introduced, the fact that such attempt was permitted was not error.

Remarks made by the court during the trial, which appellants claim were prejudicial, were made at side bar and had no effect on the jury or the award. The scope of cross-examination is largely within the sound discretion of the trial judge. The refusal of the court to permit examination of a witness to test her familiarity generally with common figures of speech and their meaning was not an abuse of discretion nor was

it error, as they were not germane to the issue being tried.

The contention that a misjoinder of actions was permitted to the prejudice of the appellants is without merit. Though each defamatory publication constitutes a separate cause of action for libel, a claim in this instance could be sustained that these publications exhibited a course of conduct by the appellants which could have been tried together. The nonsuit as to the one was granted and withdrawn from the consideration of the jury and did not prejudice the defense.

A judgment as rendered against both appellants was permitted to stand in the case of *Montgomery v. Dennison,* supra, where, as here, it was uncontradicted that Hubbard was the agent of Keystone and acted within the scope of his authority.

As to the amount of the verdict, while appellee is entitled to substantial damages, when considering the limited publication of the letter and the contents, the award is more than substantial and should be reduced to meet the demands of justice.

The verdict is reduced to $2500 and, as modified, the judgment is affirmed.

MONTGOMERY, J., took no part in the consideration or decision of this case.