485 A.2d 1176

**Barton L. POST, Appellant,**

v.

**M. Mark MENDEL.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1984.

Filed Dec. 12, 1984.

Petition for Allowance of Appeal Granted July 10, 1985.

---

William F. Sullivan, Jr., Philadelphia, for appellant.

Daniel E. Murray, Philadelphia, for appellee.

Before McEWEN, DEL SOLE and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the order entered by the Court of Common Pleas of Philadelphia County in response to a

complaint in trespass filed by the plaintiff-appellant (Barton
L. Post, Esquire). We affirm in part and quash in part.

We commence our discussion with the appellant's filing of
a 2-count amended complaint against the defendant-appellee
(M. Mark Mendel, Esquire). The first count sounded in libel
and the second in slander, and in each the plaintiff sought
in excess of $20,000 for compensatory damages as well as
an equal amount in punitive or exemplary damages.

In particular, the libel section averred the composition of
a defamatory letter by the defendant, copies of which were
mailed to a Bucks County judge (before whom the two were
embroiled in litigation as opposing counsel), to the Discipli-
nary Board of the Supreme Court of Pennsylvania and to a
William H. Simon, M.D., a supposed client of the plaintiff
and a witness in the on-going Bucks County suit. The
letter, with the legend "M. MARK MENDEL, LTD." and a
listing of the 7-member firm, read:

September 17, 1981

Barton L. Post, Esquire
Post and Schell
12th Floor
210 West Washington Square
Philadelphia, Pa. 19106
Re: Your Conduct During The Course of This Trial.
Dear Mr. Post:
I have allowed the heat of anger to pass and under calm
reflection, I have re-assessed what you did during the
course of the examination of Dr. Beller when you insinu-
ated that the doctor had two different reports and that
there were two different reports, attempted to convey to
the jury by use of the reports that the doctor had done an
unethical act by writing two different reports when, in
fact, you knew that there were two different reports, one
being a supplement to the other. One was requested at
the insistence of your partner, Mr. Arthur Toensmeir, and
while Dr. Beller was testifying, you objected to my
straightening the matter out, refused to stipulate that the
three letters, which are now Court exhibits (Nos. 1, 2 and

3) existed, and refused to stipulate, compounding your nefarious tactics in violation of the Canons in that those letters existed. Thus, your refusal to acknowledge what you had done was a patent, deceptive, nefarious act, calculated to deceive the Court and mislead the jury. There have been since that occurrence five trial days since you comported yourself in an unlawyerlike manner and have now compounded the matter by not only deceiving the Court, but allowing an expert to perjure himself with your assistance and aid. While Dr. Simon was on the stand, upon inquiry whether or not you represented him, you engaged and asked the Court to give him certain instructions or that you wished to confer with him. Dr. Simon elected, after the Court gave him an opportunity to indicate and candidly reveal your representation of him, a fact which would effect his prejudice and bias, to deny such representation when, in fact, you have represented him since March 5, 1981, in the matter of Mildred Wilson v. William H. Simon et al., Court of Common Pleas of Philadelphia County, February Term 1981, No. 4306. You stood idly by while the jury and the Court were deceived. As an officer of the Court, that conduct is abhorrent and is a violation of four Canons—D.R. 1–101 —maintaining of integrity and competence of the profession; D.R. 7–102, Sections 3, 4 and 5, wherein you concealed and knowingly failed to disclose that which you are required by law to reveal where you knowingly used perjured testimony or false evidence and where you knowingly in your presence allowed a false statement of law and fact, and remained silent.

Under the circumstances, I hereby notice [sic] you that I intend to proceed with this matter to the Disciplinary Board irrespective of any outcome of this case. As an officer of the Court, I do not choose to practice with individuals who comport themselves in this manner and you are not fit to share a court room with any lawyer who at least has sufficient respect for the law to be at all times candid.

You may not like my style, but I do not lie, sir—something that you, throughout this trial, have done. This serves notice on you. Since you have said that I "try by intimidation," I assure you this is not intimidation; this is simply an obligation which I, as an officer of the Court, must fulfill so that piranhas like you are removed from the practice of law.

Respectfully,
/s/ M. Mark Mendel
M. Mark Mendel

MMM/cb
cc: Disciplinary Board of the Supreme Court
Honorable George T. Kelton
William H. Simon, M.D.

As for the content of the slander count, the plaintiff asserted, in relevant part, that:

14. .. at various times and various places during September and October of 1981 defendant orally made statements that were slanderous and defamatory of plaintiff including statements that defendant [sic—plaintiff] in the course of the practice of his legal profession was guilty of nefarious tactics, had intentionally attempted to deceive the Court of Common Pleas of Bucks County and a judge and a jury of that Court, had acted in an unlawyerlike manner, had permitted and encouraged the commission of perjury, that plaintiff was a liar and that plaintiff had lied throughout the course of the trial, that plaintiff lacked the integrity required of those practicing [in] the legal profession, that plaintiff was unfit to practice his profession, and that plaintiff had knowingly presented and used perjured testimony.

15. Plaintiff is advised, believes, and avers that the aforesaid statements were made, *inter alia,* to other attorneys and to officers and employees of the Court of Common Pleas of Bucks County, whose identities are presently unknown to plaintiff, outside of the course and of the proceedings of the trial referred to [as *Edwards v. Hansen,* CP Bucks County No. 76–2100–03–2 and being

heard by Judge Kelton], from on or about September 16, 1981 to on or about September 25, 1981, and at various times which are at present unknown to plaintiff including *inter alia* at and during the Bench Bar Conference and thereafter, to various other members of the legal profession and to persons who were clients or potential clients of plaintiff or who had or potentially might have professional associations with plaintiff, the identities of those members and other persons being presently unknown to plaintiff.

The defendant filed preliminary objections in the nature of a demurrer arguing that the "alleged defamatory words [were] absolutely privileged in that they were disclosed in connection with a judicial proceeding." The court agreed that this was applicable to count I (libel), citing Anno., Libel and Slander: Out-of-Court Communications Between Attorneys Made Preparatory To, Or In The Course Or Aftermath Of, Civil Judicial Proceedings As Privileged, 36 A.L.R.3d 1328, and dismissed with prejudice that portion of the amended complaint.

However, as to count II (slander), the court felt it proper to afford the plaintiff the opportunity to amend the complaint "with respect to the time and place of the alleged defamatory remarks, and to whom said remarks were published ...." This appeal followed.

The first issue to be addressed concerns count I (libel) and whether that portion of the court's order finding the defamatory matter alleged in the letter absolutely privileged to be a correct assessment. *See Dempsky v. Double*, 386 Pa. 542, 126 A.2d 915 (1956). We believe it to be.

Whether an attorney's written communication outside the confines of the courtroom is covered by an absolute privilege appears to be a question of limited review in Pennsylvania. It is not, however, a novel question. *See Smith v. Griffiths*, 327 Pa.Super. 418, 476 A.2d 22 (1984).

The Restatement (Second) of Torts, § 586, provides:

> An attorney at law is absolutely privileged to publish defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding in which he participates as counsel, if it has some relation thereto.

Likewise, at 53 C.J.S., Libel and Slander, § 104(7) ("Communications by Counsel") it is written:

> ... the general rule is that whatever is published by counsel in a legal proceeding, material, pertinent, or relevant to the matter in controversy is absolutely privileged and no action can be maintained on it, even though false and actuated by improper motives, or vituperative and exaggerated....

> \* \* \* \* \* .\*

> ... it is not absolutely essential, in order to obtain the benefits of the privilege, that the language be spoken in open court or contained in a pleading, brief, or affidavit; and the privilege has been held to extend to a letter written by counsel to an opposing party relating to discontinuance and release of the cause of action, even though such letter was written spontaneously, and not in response to any communication received. (Footnotes omitted)

This view was echoed by the Supreme Court of Idaho in a case strikingly similar to the one at bar. In sustaining the district court's grant of defendant's general demurrer to the complaint for libel, the Idaho Court stated:

> The reason for the rule [in 3 Restatement of the Law of Torts, 229, Sec. 586—now located at the same section in the Restatement (Second) of the Law of Torts,] is one of public policy in which the law recognizes certain communications as privileged and cannot be used as the basis of actionable libel.

> If litigants and attorneys were not privileged in their allegations in judicial proceedings, or if they were to be subjected to prosecution for libel under such circumstances as are here presented, justice would often be defeated.

Proceedings connected with judicature of the country are so important to the public good it is only in extreme cases and circumstances that a libelous publication in a judicial proceeding can be used as the basis for damages in a libel suit. Holdings in which a recovery has been allowed where privilege was pleaded as a defense are not applicable to the circumstances presented.

*Richeson v. Kessler,* 73 Idaho 548, 552, 255 P.2d 707, 709 (1953). *Accord Simon v. Potts,* 33 Misc.2d 183, 225 N.Y. S.2d 690 (1962).

In Pennsylvania, this philosophy of permitting libel and slander to go unpunished when privileged is permised upon the theory that it is better that an individual be harmed than the public go uninformed about public business. *Biggans v. Foglietta,* 403 Pa. 510, 511, 170 A.2d 345, 346 (1961). Certainly, as noted by our Supreme Court in the context of "pleadings", "[p]ublic policy requires this, even if [sicthough] at times the privilege of immunity for false and malicious averments in pleadings is abused. Justice can be administered only when parties are permitted to plead freely in the courts and to aver whatever ought to be known without fear of consequences, if a material and pertinent averment should not be sustained. Wrong may at times be done to a defamed party, but it is damnum absque injuria. The inconvenience of the individual must yield to a rule for the good of the general public." *Kemper v. Fort,* 219 Pa. 85, 93–94, 67 A. 991 (1907).

As cited to in *Kemper,* this rule of absolute immunity from suit for libel is applicable "only when the defamatory words are relevant and pertinent to the matter or matters to be inquired into by the court ...." 219 Pa. at 93, 67 A. 991. "Where the question of the relevancy and pertinency of matters alleged in pleadings is to be inquired into," the same Court went on to say, "all doubt should be resolved in favor of relevancy and pertinency." 219 Pa. at 94, 67 A. 991. *See also Greenberg v. Aetna Insurance Co.,* 427 Pa. 511, 235 A.2d 576 (1967), *cert. denied sub nom. Scarselletti*

*v. Aetna Casualty & Surety Co.*, 392 U.S. 907, 88 S.Ct. 2063, 20 L.Ed.2d 1366 (1968); *Rose v. Wissinger*, 294 Pa.Super. 265, 439 A.2d 1193 (1982) and compare with *Barto v. Felix*, 250 Pa.Super. 262, 378 A.2d 927 (1977); *Miller v. Hubbard*, 205 Pa.Super. 111, 207 A.2d 913 (1965).

■ We see no reason why the cloak of immunity should not also be draped over an attorney's communications with the court before whom he is litigating, provided, of course, the matter is relevant and pertinent to the dispute being heard. *Simon v. Potts, supra; Richeson v. Kessler, supra; Greenberg v. Aetna Insurance Co., supra;* 53 C.J.S., Libel and Slander, § 104(7).

■ To assist us in determining relevancy, we need not inquire into the truth of the writing complained-of; for if the writing was relevant, it was absolutely privileged, and a person who is absolutely privileged is immune from financial liability even if his statement is a knowing and malicious falsehood. *Jennings v. Cronin*, 256 Pa.Super. 398, 401, 389 A.2d 1183, 1185 (1978).

■ We find that Attorney Mendel's communique, having occurred during the course of trial and having dealt with purportedly perjurious testimony, was relevant and pertinent to the litigation, and, thus, absolutely privileged. *Richeson v. Kessler, supra.* It cannot be doubted that "if all of the statements made by the defendant[-attorney] ... in his letter ... had been made in open Court they would have been held to be pertinent and privileged." *Simon v. Potts, supra,* 225 N.Y.S.2d at 700. Thus, it follows that in the case at bar the witness-Dr. William H. Simon, whose testimony was at issue, had a common interest in the controversy (claim of perjury) that occasioned the letter, since he could be the object of a perjury charge (18 Pa.C. S.A. § 4902). *See generally Larmour v. Campanale*, 96 Cal.App.3d 566, 158 Cal.Rptr. 143 (1979); *Romero v.*

*Prince*, 85 N.M. 474, 513 P.2d 717 (1973); *Rankin v. Phillippe*, 206 Pa.Super. 27, 211 A.2d 56 (1965). Accordingly, the privilege was not lost by the defendant-attorney sending a copy of the letter to Dr. Simon.

■ Nor do we find that the immunity was neutralized by the same letter being forwarded to the Disciplinary Board of the Supreme Court of Pennsylvania. *See* Prosser, The Law of Torts, § 114 at 779–780 (4th Ed.1971); Note, Attorneys' Remedies Against False Accusations of Unethical Practices, 32 Temp.L.Q. 415, 416 (1959); *cf. Sullivan v. Birmingham*, 11 Mass.App. 359, 416 N.E.2d 528, 534 (1981) ("The Canons of Ethics and Disciplinary Rules provide standards of professional conduct of attorneys and not grounds for civil liability.").

Turning now to that part of the order appealed covering count II (slander), we find it to be interlocutory.

To begin with, we observe that the law of defamation has led to the survival until the present day of two forms of action for defamatory publications: Libel, which originally concerned written or printed words; the other slander, was usually of an oral character. Prosser, The Law of Torts, § 112 at 751 (4th Ed.1971); *Western States Title Insurance Co. v. Warnock*, 18 Utah 2d 70, 415 P.2d 316 (1966).

■ Instantly, the appellant's 2-count complaint in trespass dealt with separate causes of action. One in libel, as to letters allegedly defaming the appellant; the second, in slander, covered statements supposedly made by the appellant to individuals other than those referred to in count I (libel). Thus, the two counts are *not* theories in support of recovery for defamation "arising out of the same transaction." *J.A. & W.A. Hess, Inc. v. Hazle Township*, 465 Pa. 465, 470, 350 A.2d 858, 861 (1976); *see also Canulli v. Allstate Insurance Co.*, 315 Pa.Super. 460, 462 A.2d 286 (1983); *Praisner v. Stocker*, 313 Pa.Super. 332, 459 A.2d 1255 (1983).

Therefore, it is abundantly clear to us that the trial court's order does not dispose of the entire case or otherwise end the litigation. *Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978). The appellant is not "out of court" since he still may pursue his claim for damages based upon slander (count II), once he amends his complaint to clarify when, where and to whom the statements were made. *See Itri v. Lewis*, 281 Pa.Super. 521, 422 A.2d 591 (1980). This requirement is not dispensed with by the appellant's argument that such inquiry can be made, and the information secured brought to the trial court's attention, *after discovery* proceedings.

Any information subsequently supplied by the defendant, for instance, during discovery (e.g., depositions) requested by the plaintiff cannot be used to supply the missing *allegata* of the complaint in trespass. "The sufficiency of the Complaint is governed by the facts alleged therein and the fact that the lacking information subsequently was or could be supplied is not governing." *Gross v. United Engineers and Constructors, Inc.*, 224 Pa.Super. 233, 235, 302 A.2d 370, 371 (1973).

Consequently, based on the aforesaid, we find the trial court's order dismissing count II (slander) to be interlocutory. *See Stengena v. Madden*, 291 Pa.Super. 364, 435 A.2d 1269 (1981); *Mitchell v. Center City Cadillac*, 287 Pa.Super. 350, 430 A.2d 321 (1981).

Accordingly, we affirm that portion of the order of the court below as to count I (libel); as for count II (slander) of the same order, we quash.[1]

---

1. There has likely never been a practitioner who has not experienced chagrin, distress and outrage at the hands of an adversary. Certain adversaries are particularly skilled at triggering such a reaction and even rely upon it as an instrument of the profession. However, it ill serves the profession generally, outraged counsel specifically, and his cause particularly, when retort is served in so reprehensible a fashion.

We are, therefore, somewhat inclined to observe that while the communique of counsel is privileged, we do not condone and, in fact, view with disfavor the manner of his expression of his grievance.