507 A.2d 351

**Barton L. POST, Appellant,**

v.

**M. Mark MENDEL, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 2, 1985.

Decided March 27, 1986.

214

William F. Sullivan, Jr., Philadelphia, for appellant.

Daniel E. Murray, M. Mark Mendel, Philadelphia, for appellee.

Before NIX, C.J., and FLAHERTY, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Superior Court which affirmed in part an order entered by the Philadelphia Court of Common Pleas in response to a complaint in trespass filed by the plaintiff-appellant Barton L. Post, Esq. *Post v. Mendel*, 336 Pa.Super. 467, 485 A.2d 1176 (1984).

The complaint in trespass, as amended, lodged two counts against the defendant-appellee M. Mark Mendel, Esq. The first count sounded in libel and the second in slander. It is only with the first count, libel, that the instant appeal is concerned. In connection with that count the plaintiff sought compensatory damages in excess of $20,000, as well as an equal amount in punitive or exemplary damages.

With regard to the assertion of a claim based on libel, there was an averment in the complaint that defendant had composed a letter, which was addressed to plaintiff and which disparaged plaintiff's integrity as a member of the legal profession, and that defendant had sent copies of the letter to 1.) the Honorable George T. Kelton, a judge in Bucks County before whom plaintiff and defendant were embroiled in litigation as opposing counsel, 2.) the Disciplinary Board of the Supreme Court of Pennsylvania, and 3.) William H. Simon, M.D., an alleged client of the plaintiff and a witness in the Bucks County litigation. The letter, which bore the letterhead "M. Mark Mendel, Ltd.," read as follows:

September 17, 1981

Barton L. Post, Esquire
Post and Schell
12th Floor
210 West Washington Square
Philadelphia, Pa. 19106
Re: Your Conduct During the Course of This Trial.
Dear Mr. Post:
I have allowed the heat of anger to pass and under calm reflection, I have re-assessed what you did during the course of the examination of Dr. Beller when you insinuated that the doctor had two different reports and that there were two different reports, attempted to convey to the jury by use of the reports that the doctor had done an unethical act by writing two different reports when, in fact, you knew that there were two different reports, one being a supplement to the other. One was requested at

the insistence of your partner, Mr. Arthur Toensmeier, and while Dr. Beller was testifying, you objected to my straightening the matter out, refused to stipulate that the three letters, which are now Court exhibits (Nos. 1, 2 and 3) existed, and refused to stipulate, compounding your nefarious tactics in violation of the Canons in that those letters existed. Thus, your refusal to acknowledge what you had done was a patent, deceptive, nefarious act, calculated to deceive the Court and mislead the jury. There have been since that occurrence five trial days since you comported yourself in an unlawyerlike manner and have now compounded the matter by not only deceiving the Court, but allowing an expert to perjure himself with your assistance and aid. While Dr. Simon was on the stand, upon inquiry whether or not you represented him, you engaged and asked the Court to give him certain instructions or that you wished to confer with him. Dr. Simon elected, after the Court gave him an opportunity to indicate and candidly reveal your representation of him, a fact which would effect his prejudice and bias, to deny such representation when, in fact, you have represented him since March 5, 1981, in the matter of Mildred Wilson v. William H. Simon et al., Court of Common Pleas of Philadelphia County, February Term 1981, No. 4306. You stood idly by while the jury and the Court were deceived. As an officer of the Court, that conduct is abhorrent and is a violation of four Canons—D.R. 1–101 —maintaining of integrity and competence of the profession; D.R. 7–106—trial conduct; D.R. 9–101—impropriety; D.R. 7–102, Sections 3, 4 and 5, wherein you concealed and knowingly failed to disclose that which you are required by law to reveal where you knowingly used perjured testimony or false evidence and where you knowingly in your presence allowed a false statement of law and fact, and remained silent.

Under the circumstances, I hereby notice [sic] you that I intend to proceed with this matter to the Disciplinary Board irrespective of any outcome of this case. As an

officer of the Court, I do not choose to practice with individuals who comport themselves in this manner and you are not fit to share a court room with any lawyer who at least has sufficient respect for the law to be at all times candid.

You may not like my style, but I do not lie, sir—something that you, throughout this trial, have done. This serves notice on you. Since you have said that I "try by intimidation," I assure you this is not intimidation; this is simply an obligation which I, as an officer of the Court, must fulfill so that piranhas like you are removed from the practice of the law.

> Respectfully,
> /s/ M. Mark Mendel
> M. Mark Mendel

MMM/cb

cc: Disciplinary Board of the Supreme Court
Honorable George T. Kelton
William H. Simon, M.D.

In response to the complaint's assertion of a claim based on libel, defendant filed preliminary objections in the nature of a demurrer asserting that "the alleged defamatory words [were] absolutely privileged in that they were disclosed in connection with a judicial proceeding." The Court of Common Pleas agreed that the remarks contained in the letter were absolutely privileged, and, hence, it dismissed with prejudice the portion of the complaint setting forth a claim for libel. Superior Court affirmed the dismissal of that claim.

The primary issue to be addressed in the instant appeal is whether the courts below properly determined that the matters set forth in the subject letter were protected by an absolute privilege, under the principle of judicial immunity. It has long been established that statements contained in pleadings, as well as statements made in the actual trial or argument of a case, are privileged. In *Kemper v. Fort*, 219 Pa. 85, 67 A. 991 (1907), this Court analyzed and reviewed at great length the authorities in this field, and, in a

comprehensive fashion, set forth a history of the development of the privilege. That history, an excerpt from which follows, demonstrates that protection has from early times been afforded communications that play an *integral role in pursuing the ordinary course of justice:*

In England, as far back as the time of Coke, anything said or written in legal proceedings was absolutely privileged. In Cutler and Dixon, Coke's Reports, Part IV, p. 14, it was adjudged, "that if one exhibits articles to justices of peace against a certain person, containing divers great abuses and misdemeanors, not only concerning the petitioners themselves, but many others, and all this to the intent that he should be bound to his good behavior; in this case the party accused shall not have for any matter contained in such articles any action upon the case, for they have pursued the ordinary course of Justice in such case; and if actions should be permitted in such cases, those who have just cause of complaint, would not dare to complain for fear of infinite vexation." And on the same page, in Buckley and Wood, "It was resolved per totam curiam, that for any matter contained in the bill that was examinable in the said court, no action lies, although the matter is merely false, because it was in course of justice." *In The King v. Skinner,* Lofft, 55, on a motion to quash the indictment against the defendant, who, as one of his majesty's justices of the peace, was charged with having said to a grand jury before him in the general sessions of the county, "You are a seditious, scandalous, corrupt and perjured jury," Lord Mansfield remarked: "Neither party, witness, counsel, jury or judge, can be put to answer, civilly or criminally, for words spoken in office. If the words spoken are opprobrious or irrelevant to a case, the court will take notice of them as a contempt, and examine on information. If anything of mala mens is found on such enquiry it will be punished suitably." In comparatively recent times, in *Revis v. Smith,* 86 E.C.L. 127, it was held that no action will lie against a man for a statement made by him, whether by affidavit or viva voce, in the course of a

judicial proceeding, even though it be alleged to have
been made "falsely and maliciously, and without any
reasonable or probable cause." That case was followed
by *Henderson v. Broomhead,* 4 H. & N. 569, and it was
there said by Crompton, J.: "No action will lie for words
spoken or written in the course of any judicial proceeding.
In spite of all that can be said against it, we find the rule
acted upon from the earliest times. The mischief would
be immense if the person aggrieved, instead of preferring
an indictment for perjury, could turn his complaint into a
civil action. By universal assent it appears that in this
country no such action lies. Cresswell, J., pointed out, in
*Revis v. Smith,* 18 C.B. 126 (E.C.L.R. vol. 86), that the
inconvenience is much less than it would be if the rule
were otherwise. The origin of the rule was the great
mischief that would result if witnesses in courts of justice
were not at liberty to speak freely, subject only to the
animadversion of the court.... The rule is inflexible
that no action will lie for words spoken or written in the
course of giving evidence." Another case that may be
cited is *Seaman v. Netherclift,* L.R. 1 C.P.Div. 540, where
it was said by Lord Coleridge, C.J.: "Now, a long course
of authorities, of which perhaps the best known, as the
most remarkable, is the case of *Astley v. Younge* (2 Burr.
807), has decided that no action of slander can be brought
for any statement made by the parties either in the
pleadings or during the conduct of the case.... But I
conceive the law on this point to be now quite certain,
although most men of any experience in the profession
must have seen many instances in which judicial proceed-
ings have been made by parties to them to serve the ends
of private malignity. It is equally certain, however, nor
has any question ever been raised, that the privilege of
parties is confined to what they do or say in the conduct
of the case."

219 Pa. at 88–90, 67 A. at 992–93. The historical basis for
the privilege was described at exhaustive length in *Kemper,*
and, as the foregoing excerpt from that history demon-

strates, there has long been recognized a realm of protected communications in judicial proceedings.

In this Commonwealth, protection for such communications is firmly established. As stated in *Greenberg v. Aetna Insurance Co.*, 427 Pa. 511, 514, 235 A.2d 576, 577 (1967), cert. denied, 392 U.S. 907, 88 S.Ct. 2063, 20 L.Ed.2d 1366 (1968), "When alleged libelous or defamatory matters, or statements, or allegations and averments in pleadings or in the trial or argument of a case are pertinent, relevant and material to any issue in a civil suit, there is no civil liability for making any of them." See also *Kemper v. Fort*, 219 Pa. 85, 93, 67 A. 991 (1907) (statements in pleadings privileged). The instant case differs from the bulk of those heretofore decided by this Court in that the alleged defamation did not in this instance occur in the pleadings or in the actual trial or argument of a case. Rather, the defamation took the form of an *extra-judicial* communication which was issued during the course of trial.

In deciding whether the privilege extends to the type of extra-judicial communication which this case presents, it is necessary first to consider the policy underlying the existence of the privilege. In *Greenberg v. Aetna Insurance Co.*, 427 Pa. at 515–516, 235 A.2d at 578, this Court noted that the privilege is an integral part of a public policy which permits all suitors, however bold and wicked, however virtuous and timid, to secure access to the courts of justice to present whatever claims, true or false, real or fictitious, they seek to adjudicate. To assure that such claims are justly resolved, it is essential that pertinent issues be aired in a manner that is unfettered by the threat of libel or slander suits being filed. As stated in *Greenberg*, 427 Pa. at 516, 235 A.2d at 578 (quoting *Kemper v. Fort*, 219 Pa. at 94, 67 A. at 994),

"Justice can be administered only when parties are permitted to plead freely in the courts and to aver whatever ought to be known without fear of consequences, if a material and pertinent averment should not be sustained. Wrong may at times be done to a defamed party, but it is

damnum absque injuria. The inconvenience of the individual must yield to a rule for the good of the general public."

The justifications for the privilege were further explained in *Binder v. Triangle Publications, Inc.*, 442 Pa. 319, 323–324, 275 A.2d 53, 56 (1971), where this Court stated,

The reasons for the absolute privilege are well recognized. A judge must be free to administer the law without fear of consequences. This independence would be impaired were he to be in daily apprehension of defamation suits. The privilege is also extended to parties to afford freedom of access to the courts, to witnesses to encourage their complete and unintimidated testimony in court, and to counsel to enable him to best represent his client's interests. Likewise, the privilege exists because the courts have other internal sanctions against defamatory statements, such as perjury or contempt proceedings.

Thus, the privilege exists because there is a realm of communication essential to the exploration of legal claims that would be hindered were there not the protection afforded by the privilege. The essential realm of protected communication is not, however, without bounds. Rather, the protected realm has traditionally been regarded as composed only of those communications which are issued *in the regular course of judicial proceedings* and which are *pertinent and material to the redress or relief sought.* *Kemper,* 219 Pa. at 93, 67 A. at 994–95; *Greenberg,* 427 Pa. at 515, 235 A.2d at 578; *Barto v. Felix,* 250 Pa.Super. 262, 378 A.2d 927 (1977), appeal dismissed, 487 Pa. 455, 409 A.2d 857 (1980) (although statements in briefs are privileged, counsel's reiteration of the contents of his brief at a press conference held not privileged because the remarks were not made at a judicial proceeding).

█ We do not regard the alleged defamatory letter in the instant case as having been issued in the regular course of judicial proceedings as a communication pertinent and material to the redress sought. Although the letter made

reference to matters which occurred in an ongoing trial, the letter was not directly relevant to the court proceedings. Accordingly, we do not believe issuance of the letter was within the sphere of activities which judicial immunity was designed to protect. The privilege is not a license for extra-judicial defamation, and there is unnecessary potential for abuse if letters of the sort written in this case are published with impunity. Formal procedures are available to address the grievances which the writer of the letter perceived, without resort to extra-judicial defamation.

The letter was not addressed to Judge Kelton, but rather a copy was merely sent to him. The letter did not state or argue any legal position, and it did not request any ruling or action by the court. Nor did the communication request that anything contained in it should even be considered by the court. The letter was clearly not a part of the judicial proceedings to which it made reference, and merely forwarding a copy of the letter to the court did not make it a part of those proceedings. Likewise, forwarding copies of the letter to plaintiff's alleged client, William H. Simon, M.D., and to the Disciplinary Board of the Supreme Court of Pennsylvania did not render the letter a part of the trial proceedings, and transmittal of those copies would not logically have been expected to affect the course of trial. Thus, the policy of promoting an unfettered airing of issues at trial is not infringed by our holding that the letter published in this case was outside the ambit of judicial immunity.

It is argued that if, as we have held, the letter was not published as part of the course of the judicial proceedings to which the letter referred, then publication of the letter was privileged with respect to other proceedings, such other proceedings being those which might be brought in an action before the Disciplinary Board charging plaintiff with professional misconduct, or other proceedings which might be brought charging plaintiff's alleged client, William H. Simon, M.D., with perjury. Citing the Restatement (Second) of Torts § 586 (1977), defendant asserts that judicial

immunity is applicable to communications which are preliminary to proposed judicial proceedings. The Restatement (Second) of Torts, § 586, states:

An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications *preliminary to a proposed judicial proceeding*, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, *if it has some relation to the proceeding.*

(Emphasis added).

▇▇▇ Whether a challenged communication is published prior to, or during, a judicial proceeding, it must bear a certain relationship to the proceeding so as to qualify it as privileged. That relationship is, in either case, the same. As discussed supra. in reference to communications made during judicial proceedings, it is necessary that a protected communication have been pertinent and material to the redress sought and that the communication have been issued in the regular course of the proceedings. Similarly, with respect to communications made prior to the institution of proceedings, the protected communication would need to have been pertinent and material and would need to have been issued in the regular course of preparing for contemplated proceedings. Evaluated by this standard, the instant letter does not qualify as privileged with respect to proceedings which might be brought against plaintiff's alleged client, William H. Simon, M.D., or against plaintiff himself.

In any action based upon perjury which might be brought against plaintiff's alleged client, it would not be pertinent, material, and in the regular course of procedure to send copies of the present letter to Judge Kelton and to the Disciplinary Board. Further, the characterizations, as distinguished from alleged facts, set forth in the letter describing plaintiff as an unprofessional attorney and a nefarious piranha and liar would not be relevant to a perjury proceeding against William H. Simon, M.D. Similarly, in any action based upon professional misconduct which might be brought against plaintiff in a proceeding before the Discipli-

nary Board, it would not be pertinent, material, and in the regular course of procedure to forward copies of a letter such as the present one to Judge Kelton and to William H. Simon, M.D. In short, defendant published the letter to persons who would have had no direct interest in either of the proceedings which might have ensued. Publication of the letter to such persons was, therefore, not privileged.

Thus, the Court of Common Pleas, in sustaining defendant's preliminary objections to the count sounding in libel, erroneously determined that judicial immunity precluded liability with respect to that count. In dismissing that count, the court did not afford plaintiff an opportunity to amend his complaint to allege certain additional facts pertaining to the libel action, apparently in the belief that amendment would be futile since judicial immunity was perceived as barring any such suit. It is established that leave to amend should not be withheld where there is some reasonable possibility that defects in a complaint can be cured through amendment. *Otto v. American Mutual Insurance Co.,* 482 Pa. 202, 393 A.2d 450 (1978). Accordingly, we reverse the order of the Superior Court insofar as it affirmed the dismissal of the libel action, and remand to the Court of Common Pleas for proceedings consistent with our decision.

Order of the Superior Court reversed, and case remanded to the Court of Common Pleas.

LARSEN, J., did not participate in the consideration or decision of this case.

McDERMOTT, J., did not participate in the consideration or decision of this case.

PAPADAKOS, J., filed a dissenting opinion.

PAPADAKOS, Justice, dissenting.

I must dissent from the Majority's conclusion that the subject communication was not sent in the regular course of preparing for contemplated proceedings against Appellant. A reading of the communication indicates, in the clearest

possible language, that the letter itself was notice to Appellant that Appellee was filing charges against him with the Disciplinary Board. The letter itself is the formal complaint against Appellant which was forwarded to the Board. The copies of the letter to the trial judge and Dr. Simon were pertinent, material, and in the regular course of procedure because these individuals were involved in the alleged improper conduct of Appellant and could very well be called upon by the Disciplinary Board in its investigation of Appellee's complaint. Accordingly, they clearly had an interest in the proceedings which might ensue before the Disciplinary Board. I would hold this communication protected as made prior to the institution of proceedings (Restatement of Torts, § 586) and would affirm the order of Superior Court.