# 22 Front Street LLC v. Gorodetzer

*Daniel R. Utain* and *Mohammad A. Ghiasuddin,* for plaintiffs

*David P. Heim, George Bochetto, John A. O'Connell* and *Jeffrey W. Ogren,* for defendants Brett A. Berman, Esquire, Robert S. Tintner, Esquire and Fox Rothschild, LLP

*Gaetan J. Alfano, Douglas K. Rosenblum* and *Peter Shindel* for defendants N. Lily Khalif, Laurie Rosard, Steve Rosard, Maryellen Gorodetzer, Kristen Casper, Marilyn Casper, Ade Bolden, Marshall Gorodetzer, Genny Dunne, Christopher Dunne, Deann Zufall, Elpi Paradiso, Tom Paradiso, Aditya Maini, Meghan Maini, Steven L. Lepore and Nadica Kracun

GLAZER, *J.,* June 4, 2013— In this action, plaintiff 22 Front Street. LLC t/a 22 Front, L.P. (hereinafter "22 Front Street") alleges claims for tortious interference with contractual relations, abuse of process and slander of title against defendants Fox Rothschild, LLP, Robert S. Tintner, Esquire and Brett A. Berman, Esquire (hereinafter "Fox defendants"). Plaintiff 22 Front Street is the owner and developer of the condominium building located at 22 Front Street in Philadelphia, Pa. The Fox defendants were retained to represent the resident unit owners of the condominium building in an action instituted against 22 Front Street and Friends Center City Retirement Community to stop 22 Front Street from changing the use

of the condominium.[1]

22 Front Street Condominiums were marketed as a "luxury residential facility" and "premier" high-end building offering "five star" city living. 22 Front Street negotiated with Friends Center City Retirement Community in or around August 2009 for the sale of certain units in the 22 Front Street Condominium Building to members of the Friends. Shortly thereafter, 22 Front Street entered into an agreement to sell to the Friends or its members a minimum of ten condominium units and one commercial unit at the condominium.

In or about July or August 2010, the existing residents of the condominium learned the condominium was no longer being marketed as a "premier" "luxury residential facility" and was being advertised to the general public through flyers as a retirement community. Many of the existing residents became concerned about the marketing and the use intended by the Friends.

On August 30, 2010, the Fox defendants, on behalf of the residents, sent a letter to 22 Front Street objecting to the marketing of the building as a "retirement community," "Philadelphia's newest retirement concept" and an "urban retirement living community." The demand letter was copied to Sovereign Bank, 22 Front Street's lender.[2] The

---

1. The resident unit owners have been dismissed from this action.

2. 22 Front Street financed the development of the condominium through two Sovereign Bank loans issued on October 17, 2005. By May 15, 2008, with a majority of the units unsold, 22 Front Street defaulted on the loans. On February 9, 2009 and February 12, 2009, respectively, Sovereign Bank confessed judgment against the personal guarantors, the Kaplins and 22 Front Street. In March, 2009, the Kaplins filed petitions to strike or open the judgments and to stay execution.

demand letter stated that the actions of 22 Front Street were in direct violation of the terms of the declaration, the public offering statement and the Pennsylvania Condominium Act, since unanimous consent of the unit owners approving use change was required.

The demand letter advised that if 22 Front Street and the Friends did not agree to immediately cease its unlawful marketing of the condominium as a retirement community, the residents would seek emergency relief from the court. 22 Front Street contacted a representative of the Fox defendants and warned them that the residents' objections to the sale of units to the Friends were frivolous and improper. 22 Front Street further advised the Fox defendants they would hold the residents and the Fox defendants liable if they continued to interfere with the agreement.

On October 1, 2010, the Fox defendants filed a complaint on behalf of twenty-two residents against 22 Front Street and the Friends seeking to enjoin 22 Front Street and the Friends from marketing and converting the condominium into a retirement community ("the underlying action"). The complaint further sought monetary damages in connection with various construction defects and omissions. On October 4, 2010, the residents filed a petition for preliminary injunction to enjoin the change of use from a "luxury residential facility" to a "retirement community" and to enjoin the sale.

On October 8, 2010, 22 Front Street counsel wrote to the Fox defendants alleging the underlying action impaired 22 Front Street's ability to sell its units to buyers. In the

letter, 22 Front Street stated the following:

> If you do not withdraw your claims against 22 Front Street, 22 Front Street will file an action against each of your clients, you and your law firm for tortious interference with our prospective relations with the Friends and tortious interference with it prospective agreements with other qualified buyers.

On November 15, 2010, the petition for preliminary injunctive relief was denied. On December 2, 2010, the Fox defendants appealed the denial on behalf of the residents to the Superior Court.

On April 29, 2011, 22 Front Street once again wrote to the Fox defendants and complained that the lawsuit was interfering with 22 Front Street's sale of the condominium units. 22 Front Street again demanded the Fox defendants to dismiss the lawsuit and threatened litigation in the event the suit was not dismissed. The Fox defendants informed the residents of the threat of suit by 22 Front Street if the suit was not withdrawn. 22 Front Street also had direct communications with several residents concerning the threat of suit in the event the lawsuit was not withdrawn.

On May 19, 2011, the Fox defendants informed the Friends that the matter was resolved as it pertained to their respective clients. On August 31, 2011, the residents agreed to settle, discontinue and end each of the counts for equitable relief in the second amended complaint against the Friends. The agreement provided in part:

> . . . this Agreement is not intended to, nor does it, in any manner release, remise or discharge 22 Front

street, L.P., Marc Kaplin or the Executive Board of 22 Front Street except that the claims for declaratory and injunctive relief contained in Counts I, IV, VI and VII of the Second Amended Complaint, or any subsequent Amended Complaint, will be marked settled, discontinued and ended as part of this settlement.

22 Front Street was not a signatory to the settlement agreement.

On August 2, 2011, the residents filed a third amended complaint including a claim against 22 Front Street for tortious interference with the settlement agreement between the Friends and the residents. On August 18, 2011, the Fox defendants withdrew the appeal of the denial of the petition.

In October 2011, 22 Front Street commenced the instant matter against the Fox defendants alleging claims for slander of title, wrongful use of civil process, abuse of process and tortious interference with contractual relations.[3] Presently before the court is the Fox defendants motion for summary judgment.

## DISCUSSION

In count I (tortious interference with contract) and count IV (slander of title), 22 Front Street alleges the Fox defendants acted improperly by commencing the underlying action seeking to enjoin the sale of the condominium units to the Friends for the purpose of converting the building into a retirement community.

---

3. The claim for malicious prosecution was dismissed by the court upon the filing of preliminary objections.

The filing of the underlying action to enjoin the sale of the condominium units to the Friends is protected by the absolute judicial privilege.

Pursuant to the judicial privilege, a person is entitled to absolute immunity for "communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought."[4] This privilege is based on the "public policy which permits all suitors, however bold and wicked, however virtuous and timid, to secure access to the courts of justice to present whatever claims, true or false, real or fictitious, they seek to adjudicate."[5] To assure such claims are justly resolved, it is essential that pertinent issues be aired in a manner that is unfettered by the threat of libel or slander suits. Importantly, the existence of the privilege does not depend upon the motive of the defendant in making the allegedly defamatory statement. The privilege is absolute and cannot be destroyed by abuse.[6]

The reasons for the absolute privilege are well recognized. The privilege is extended to parties to afford freedom of access to the courts, to witnesses to encourage their complete and unintimidated testimony in court, and to counsel to enable him to best represent his client's interests. Likewise, the privilege exists because the courts have other internal sanctions against defamatory

---

4. *Bochetto v. Gibson*, 580 Pa. 245, 860 A.2d 67 (Pa. 2004), *quoting Post v. Mendel*, 510 Pa. 213, 507 A.2d 351, 355 (1986).

5. *Id.*

6. *Greenberg v. Aetna Ins. Co.*, 427 Pa. 511, 235 A.2d 576 (1967), *cert. denied sub nom., Scarselletti v. Aetna Casualty & Surety Co.,* 392 U.S. 907, 88 S.Ct. 2063, 20 L.Ed.2d 1366 (1968); *Triester v. 191 Tenants Ass'n,* 272 Pa. Super. 271, 277-79, 415 A.2d 698, 702 (1979).

statements, such as perjury or contempt proceedings.[7]

In applying the above principles to the case sub judice, the filing of the underlying action by the Fox defendants, as well as the petition for injunctive relief, appeal and the subsequent amended pleadings in that action is protected by the privilege. The filing was made in the regular course of the legal proceedings and was pertinent and material to the legal proceeding. As such, the statements contained within the legal pleadings are protected by the absolute judicial privilege and therefore the Fox defendants' motion for summary judgment is granted as to the claims for tortious interference with contract and slander of title.[8]

## CONCLUSION

Defendants' motion for summary judgment is granted in part and the claims for tortious interference with contract (count I) and slander of title (count IV) are dismissed. All other aspects of the motion are denied.[9]

## ORDER

7. *Pawlowski v. Smorto*, 403 Pa. Super. 71, 80, 588 A.2d 36, 41 (1991).

8. In count one, 22 Front Street alleges the Fox defendants interfered with 22 Front Street's contract with its lender, Sovereign Bank, by sending the August 30, 2010 demand letter to Sovereign. The Fox defendants argue that said claim is barred by the absolute judicial privilege. However, it is clear from the record that the claim fails because 22 Front Street suffered no damage as a result of said letter. Marc Kaplin, the managing member of 22 Front Street, admitted the letter did not interfere with its relationship with Sovereign. (Exhibit "II" Marc Kaplin deposition in supplemental memorandum of law in support of Fox defendants motion for summary judgment). Since actual damage is an element of tortious interference of contract and 22 Front Street failed to prove damage as a result of said letter, the claim for tortious interference with contract as it pertains to the August 30, 2010 demand letter is dismissed.

9. The motion for summary judgment as it pertains to abuse of process is denied since genuine issues of material fact exist.

And now, day of June 4, 2013, upon consideration of defendants Fox Rothschild, LLP, Robert S. Tintner, Esquire and Brett A. Berman, Esquire's motion for summary judgment, plaintiff's response in opposition and all supplemental submissions by the parties, it hereby is ordered that the motion for summary judgment is granted in part as to count I (tortious interference with contractual relations) and count IV (slander of title) and said claims are dismissed. Defendants' motion for summary judgment is denied as to count II (abuse of process).