MICHAELS, Appellant,

v.

BERLINER et al., Appellees.

[Cite as *Michaels v. Berliner* (1997), 119 Ohio App.3d 82.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17905.

Decided April 9, 1997.

84

*Daniel J. McGown,* for appellant.

*Roetzel & Andress* and *Ronald S. Kopp; Carlile, Patchen & Murphy, Laurence E. Sturtz* and *Alan F. Berliner,* for appellees.

DICKINSON, Presiding Judge.

Plaintiff Andrew J. Michaels has appealed from an order of the Summit County Court of Common Pleas that granted defendants Alan F. Berliner and Carlile, Patchen & Murphy summary judgment. He argues that (1) the trial court's conclusion that the doctrine of absolute privilege barred his defamation claim and its grant of summary judgment to defendants were based on facts that were unsupported by the record; (2) summary judgment could not have been properly entered on the basis of defendants' alternative argument that a qualified privilege existed, because there were genuine issues of material fact concerning the elements of that privilege; (3) the trial court incorrectly failed to overrule defendants' procedurally defective motion to dismiss, which resulted in the court's failure to require defendants to plead or waive their affirmative defenses; and (4) the trial court abused its discretion in granting defendants' motion for summary judgment and denying his motion to strike defendants' motion on the ground that it was filed without leave of court five months after a pretrial hearing had taken place.[1] This court reverses the judgment of the trial court because (1) there were genuine issues of material fact as to whether absolute privilege barred the action and (2) there were genuine issues of material fact as to whether qualified

---

1. Michaels's assignments of error have been consolidated for ease of discussion.

privilege barred the action. Michaels's third and fourth assignments of error are moot in light of the disposition of his first two assignments of error.

I

This action arose out of events that took place in connection with another action in which plaintiff Andrew J. Michaels and defendants, Alan F. Berliner and his employer, Carlile, Patchen & Murphy, were opposing counsel. Michaels represented John David Jones, who was suing DLZ Corporation and two of its officers, chief executive officer Vakrim V. Rajadhyaksha and director of finance James May. DLZ, Rajadhyaksha, and May were represented by defendants. That action, hereinafter referred to as the "Jones–DLZ litigation," was based on Jones's allegations that Rajadhyaksha had defamed him, resulting in, among other things, the termination of Jones's employment with JDJ & A, Inc.

DLZ was the parent company of JDJ & A. JDJ & A was formed when DLZ took over the contracts and hired most of the employees of a financially stressed company named John David Jones and Associates, Inc., which Jones had owned. Jones's daughter, Stephanie Jones, had been president of John David Jones and Associates. She also succeeded her father as president of JDJ & A when he was terminated from that position.

After JDJ & A was formed, up until the time of this action, Michaels had represented John David Jones and Associates, as well as Ms. Jones and Mr. Jones as individuals, in litigation by creditors of John David Jones and Associates. In that litigation, defendant Carlile, Patchen & Murphy had represented DLZ, Rajadhyaksha, and JDJ & A. This representation arrangement was noted in a "Joint Defense Agreement," signed by Michaels and Carlile, Patchen & Murphy, that purported to protect communications that took place among the defense attorneys, their clients, and their witnesses during that litigation. Michaels had also represented Mr. Jones and Ms. Jones as individuals in other matters, and had represented JDJ & A in a few minor matters, such as getting a JDJ & A employee excused from jury duty. Michaels has asserted that he never represented DLZ or JDJ & A in the litigation by creditors of John David Jones and Associates, had never represented DLZ, and had never represented JDJ & A in any significant matters or received confidential information concerning those companies that could have resulted in a conflict in the Jones–DLZ litigation.

According to defendants, however, Michaels's representation of John David Jones and Associates, Mr. Jones, and Ms. Jones had constituted representation of the interests of DLZ and/or its subsidiaries, particularly JDJ & A. Defendants have also alleged that, based on documents that appeared to refer to Michaels as the attorney for JDJ & A, and others that appeared to bill JDJ & A for legal services by Michaels, Michael had provided significant representation to JDJ & A

and, in fact, still represented JDJ & A on the date when the Jones–DLZ litigation was commenced. Defendants have also claimed that JDJ & A, as the former employer of Mr. Jones, was a necessary party to the Jones–DLZ litigation, although not named as a defendant, and that, consequently, Michaels could not ethically represent Mr. Jones in the action because one of the necessary defendants was his own client, JDJ & A.

On February 16, 1995, Berliner sent a "courtesy letter" to Michaels, asking him to withdraw as counsel in the Jones–DLZ litigation and outlining the bases for defendants' view that he had a conflict of interest in that action. Specifically, the letter referred to several cases and matters on which defendants alleged Michaels had worked and was still working on behalf of DLZ and JDJ & A. In the letter, defendants alleged that Michaels had represented defendants' clients and their clients' interests, that he had been exposed to their clients' confidential information, and that he could now use that information against defendants' clients through his position as opposing counsel. They asserted that if Michaels did not withdraw they would file a motion to disqualify him from the case and seek costs and attorney fees for the motion.[2]

On February 22, 1995, Michaels filed this action against defendants, alleging libel and attempted extortion. On March 27, 1995, defendants filed a motion to dismiss, which the trial court never ruled on. A pretrial hearing was held on May 30, 1995. On October 23, 1995, defendants moved for summary judgment. Michaels moved to strike that motion. The court denied the motion to strike. Michaels then filed a response to the summary judgment motion, to which defendants replied. The court granted defendants' motion for summary judgment on May 7, 1996. Michaels timely appealed to this court.

## II

### A

Michaels's first assignment of error is that the trial court's apparent conclusion that the doctrine of absolute privilege barred his defamation claim and its entry of summary judgment in favor of defendants were based on facts that were unsupported by the record. In reviewing a trial court's ruling on a motion for summary judgment, this court applies the same standard that a trial court is required to apply in the first instance; whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter

---

2. Defendants did eventually file such a motion, which was denied, and also filed a complaint with the Office of Disciplinary Counsel alleging several ethical violations by Michaels in connection with his representation of John David Jones against DLZ. That office declined to entertain the complaint because the Jones–DLZ litigation was still pending.

of law. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123. A party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429–430, 674 N.E.2d 1164, 1170–1172. Then and only then is there a reciprocal burden on the nonmoving party to respond by showing that there are genuine issues of material fact to be tried. *Id.*

In claiming that the trial court based its summary judgment decision on facts not supported by the record, Michaels has complained that the trial court wrote that the parties "had, for some period prior to February of 1995, worked together in representing a company named DLZ and/or its subsidiaries," and that copies of the letter in question had been sent "to several people, all of whom had an interest in the litigation." Because there were, according to Michaels, factual disputes about whether he had ever represented the interests of DLZ or its subsidiaries in any significant way and, consequently, as to whether Stephanie Jones had a sufficient interest in the Jones–DLZ litigation for any privilege to apply, he has argued that the trial court erred by failing to construe the evidence in his favor when it granted defendants' motion for summary judgment.

 The doctrine of absolute privilege bars a defamation claim in connection with a judicial proceeding under certain circumstances. The privilege originally developed to protect statements made in "legislative proceedings, judicial proceedings, official acts of the executive offices of state or nation and acts done in the exercise of military or naval authority." *McChesney v. Firedoor Corp.* (1976), 50 Ohio App.2d 49, 51, 4 O.O.3d 28, 30, 361 N.E.2d 552, 553, citing *Bigelow v. Brumley* (1941), 138 Ohio St. 574, 579–580, 21 O.O. 471, 473–474, 37 N.E.2d 584, 588–589. See, also, *M.J. DiCorpo, Inc. v. Sweeney* (1994), 69 Ohio St.3d 497, 505, 634 N.E.2d 203, 208–209. With respect to judicial proceedings, the privilege protects the integrity and reputation of the justice system by allowing persons involved in judicial proceedings to speak freely without fear of defamation suits against them. See *Erie Cty. Farmers' Ins. Co. v. Crecelius* (1930), 122 Ohio St. 210, 171 N.E. 97. Thus, witnesses, parties, attorneys, and judges are protected while functioning as such in the usual and regular course of judicial proceedings. See *id.* See, also, *Post v. Mendel* (1986), 510 Pa. 213, 507 A.2d 351, 355. For example, a statement made in a written pleading or brief, or in an oral statement to a judge or jury in open court, is absolutely privileged if it has some reasonable relation to the judicial proceeding in which it appears. See *Surace v. Wuliger* (1986), 25 Ohio St.3d 229, 25 OBR 288, 495 N.E.2d 939, syllabus, and *Justice v. Mowery* (1980), 69 Ohio App.2d 75, 76, 23 O.O.3d 100, 101, 430 N.E.2d 960, 961–962.

 The privilege is not without limits, however, as the above cases suggest. It does not give a person *carte blanche* to defame another on the mere condition

that a judicial proceeding is mentioned in, or somehow connected to, the defamatory statement. In this case, the statements at issue were not made in a court document or in front of a judge or jury, but in a letter outside of court that referred to an attorney's conduct in an ongoing trial. The Supreme Court of Pennsylvania considered a similar case in 1986. See *Post v. Mendel, supra.* An attorney had written a letter to his opposing counsel during the trial of their case, accusing the recipient of unethical conduct and notifying him of the author's intention to file a complaint with the disciplinary board. A copy of the letter was sent to the judge in the ongoing trial and to one of the recipient's clients, who was also a witness in the trial. The court held that absolute privilege protects only those communications that are made in the regular course of preparing for or conducting judicial proceedings, and that are pertinent and material to the redress or relief sought. *Id.,* 510 Pa. at 221, 507 A.2d at 355–356. The letter, according to the court, was an "extrajudicial communication," not made in the regular course of the underlying trial or in the regular course of preparing for a contemplated disciplinary complaint, and published to persons with no direct interest in one or both of such proceedings. *Id.* at 223–224, 507 A.2d at 356–357. It was, therefore, not absolutely privileged.

 To come within the privilege, then, a statement not published as a part of a judicial proceeding must, at least, be made in the regular course of preparing for or conducting such a proceeding and be pertinent and material to the redress or relief sought. Further, it must be published only to persons who are directly interested in the proceeding. See *Theiss v. Scherer* (C.A.6, 1968), 396 F.2d 646, 648, 17 Ohio Misc. 172; and *Post v. Mendel, supra.* Defendants' courtesy letter was not part of the Jones–DLZ proceeding itself. It was not submitted as evidence, as a pleading, or as any other court document. Like the letter at issue in *Post,* it was an extrajudicial communication. Since it was not part of the regular proceedings of the Jones–DLZ litigation, it was required to be at least sent in the regular course of preparing for or conducting a judicial proceeding, and confined to persons with a direct interest in the proceeding, in order to be absolutely privileged. This court concludes that a courtesy letter such as the one at issue is generally sent in the regular course of preparing for a motion to disqualify an attorney from a judicial proceeding. Public policy, and judicial economy in particular, support the practice of sending such letters. A courtesy letter gives notice to the attorney against whom the motion may be filed. It provides him an opportunity to cure any problems on which the motion would be based, convince the author that the motion would be inappropriate, or prepare his client for a possible change in representation.

 The remaining question, then, is whether the letter was sent only to persons with a direct interest in the Jones–DLZ litigation and/or the motion to

disqualify, as the trial court held. Michaels has argued that Ms. Jones did not have a direct interest in the Jones–DLZ litigation. Defendants have claimed that, in their motion for summary judgment, they met their burden of demonstrating the absence of a genuine issue of material fact as to whether Ms. Jones was directly interested in the Jones–DLZ litigation by pointing to evidence that Ms. Jones was president of JDJ & A, that she was on the DLZ executive committee, and that Michaels had worked with defendants in representing the interests of DLZ and JDJ & A. They have argued that Michaels did not offer any evidence whatsoever in response to their summary judgment motion on these issues and, therefore, the trial court did not err by accepting defendants' evidence on those issues and ruling against Michaels. Construing that evidence in favor of Michaels, defendants have argued, reasonable minds could only conclude that Ms. Jones was an interested party to the Jones–DLZ litigation. This court has concluded otherwise.

First, defendants' claim that there was undisputed evidence that Ms. Jones was on the DLZ executive committee is incorrect. Defendants pointed to no such evidence in their brief or in connection with their original motion for summary judgment, and no such evidence is apparent to this court. The issue of whether she was on the executive committee, therefore, was not a proper consideration for the trial court in deciding the motion for summary judgment and thus is not properly before this court for purposes of this appeal. See *Vahila v. Hall, supra.* See, also, Civ.R. 56.

Second, Michaels did not necessarily need to dispute that Ms. Jones was president of JDJ & A. He did dispute whether that position by itself gave her a direct interest in the Jones–DLZ litigation. For support, he referred to a page in a transcript of a hearing from the Jones–DLZ litigation that contained a list of the recipients of the letter, and to his original complaint to show who the parties to the litigation were, as evidence that Ms. Jones received the letter but was not a party or an officer of a party to the Jones–DLZ litigation and, therefore, had no direct interest in it. Even agreed-upon facts must be construed in favor of the nonmoving party when a motion for summary judgment is being considered. Civ.R. 56. This means that, if Ms. Jones's presidency of JDJ & A would not necessarily lead to the conclusion that she had a direct interest in the Jones–DLZ litigation, the trial court could not properly conclude that she had such an interest based only on that fact. This court concludes that Ms. Jones's presidency of JDJ & A, merely because that company was a subsidiary of a party to the Jones–DLZ litigation, was not sufficient to establish that she had a direct interest in that litigation.

Third, defendants' assertion that her presidency gave her a direct interest because JDJ & A itself was a "necessary" or "interested" party in the Jones–

DLZ litigation is without merit. Defendants have asserted that, because Michaels had formerly represented JDJ & A and was, in effect, now suing that company in the Jonez–DLZ litigation, JDJ & A was a necessary party to that action. Michaels demonstrated that JDJ & A was not a party to the Jones–DLZ case. Defendants could not rely on their own speculation as to JDJ & A's proper position in the case as a fact upon which to base their claim of Ms. Jones's direct interest. Regarding the issue of JDJ & A's interest in the Jones–DLZ litigation, Michaels pointed to evidence that he had never represented JDJ & A in any significant matter, as defendants had asserted. He referred the trial court to part of a transcript of a hearing at which Ms. Jones, president of JDJ & A, had testified that Michaels had not represented JDJ & A in the litigation for which the Joint Defense Agreement had been produced, and had not been representing JDJ & A at or just prior to the time Berliner sent the allegedly defamatory letter. This contradicted statements in the letter and in defendants' motion for summary judgment, and defeated defendants' claim that there were no factual issues as to whether JDJ & A's president had a direct interest in the Jones–DLZ litigation based on the assertion that Michaels had a conflict of interest involving JDJ & A.

In sum, defendants' three methods of attempting to establish the absence of a genuine issue of material fact on the issue of Ms. Jones's direct interest in the Jones–DLZ litigation failed. There was no evidence of Ms. Jones's alleged membership on the DLZ executive committee offered or pointed to in connection with the motion for summary judgment. Ms. Jones's presidency of a DLZ subsidiary did not automatically mean that she was interested in the Jones–DLZ litigation. Finally, Michaels met his burden of disputing defendants' evidence on the issue of whether he had represented JDJ & A in such a way as to create a conflict of interest in the Jones–DLZ litigation, so that the president of JDJ & A would be directly interested in that case. Michaels's first assignment of error is sustained.

## B

Michaels's second assignment of error is that, if summary judgment could have been considered on the basis of defendants' alternative argument, based on the doctrine of qualified privilege, there were genuine issues of material fact concerning the elements of qualified privilege, and summary judgment on that basis would also have been in error. A qualified or conditional privilege arises when there is "good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 8, 651 N.E.2d 1283, 1290. It is a privilege that "arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is

not restricted within any narrow limits." *Id.* The privilege attaches not to the communication in question but to the occasion on which it is made. *Id.* at 8–9, 651 N.E.2d at 1290–1291. The privilege is defeated by a showing that the allegedly defamatory communication was made with "actual malice," defined as knowledge of falsity or disregard as to truth or falsity. *Id.* at 11–12, 651 N.E.2d at 1292–1293.

Defendants have asserted that the letter was qualifiedly privileged because there was enough indication of a conflict of interest to justify sending the letter to people involved in managing the companies that may have made confidential communications to Michaels and might, therefore, have been put at risk by his position in the Jones–DLZ litigation. One of those people, according to defendants, was Ms. Jones, as president of JDJ & A, because that company had been involved in litigation referred to in the "Joint Defense Agreement." Defendants have argued that Michaels received confidential information about DLZ and JDJ & A in connection with that litigation and other matters that he might have used against those companies in the Jones–DLZ litigation. According to defendants, they were attempting, in good faith, to uphold an important interest, that being the protection of their clients' confidences. They have also argued that they demonstrated that they met the other requirements for qualified privilege. Michaels, according to defendants, offered no evidence in response to this issue at the trial court level.

Michaels has argued that he did point to evidence of an improper purpose behind the letter, namely, an attempt to coerce Ms. Jones into settling the Jones–DLZ case. He referred to Ms. Jones's testimony at a hearing, regarding a DLZ agent's warning to her that Michaels would be disqualified from the Jones–DLZ case and that her father would not be able to afford to continue with that lawsuit. In addition, Michaels has argued that, even if there was a qualified privilege, he also pointed to evidence of malice, which demonstrated an issue of fact for trial. If this is true, this court need not reach the issue of whether a qualified privilege existed, because a factual dispute concerning the existence of malice would have precluded summary judgment on the grounds of qualified privilege. *Id.*

Michaels asserted that defendants knew that the allegedly defamatory statements in their letter were false, such as the assertion that Michaels and defendants had been "co-counsel for DLZ, its subsidiaries and principals." He referred the trial court to the list of parties and their respective attorneys in the earlier litigation, and pointed to the fact that he and defendants were never listed as cocounsel in any document pointed to by defendants. He also referred to affidavits that contained evidence disputing defendants' claims that they had reason to believe Michaels had been an attorney for DLZ or JDJ & A and that, therefore, a conflict existed in the Jones–DLZ litigation. Assuming, without

concluding, that a qualified privilege existed with respect to the letter, Michaels's evidence demonstrated that there remained a genuine issue for trial regarding actual malice, which would have defeated a defense of qualified privilege. The doctrine of qualified privilege, therefore, could not properly have been an alternative basis for summary judgment. Michaels's second assignment of error is sustained.

## C

Michaels's third assignment of error is that the trial court incorrectly failed to overrule defendants' procedurally defective motion to dismiss, which resulted in the court's failure to require defendants to plead or waive their affirmative defenses. His fourth assignment of error is that the trial court abused its discretion in granting defendants' motion for summary judgment and denying his motion to strike defendants' motion on the ground that it was filed without leave of court even though a pretrial hearing had already taken place. In light of the disposition of the first two assignments of error, Michaels's third and fourth assignments of error are moot and are overruled on that basis.

## III

Michaels's first and second assignments of error are sustained. His third and fourth assignments of error are overruled. The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

QUILLIN and BAIRD, JJ., concur.