This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Plaintiff Andrew J. Michaels has appealed from a judgment of the Summit County Common Pleas Court that entered summary judgment on his claim for libel in favor of Defendants Alan F. Berliner and Carlile, Patchen 
Murphy. This Court reverses, and the cause is remanded for proceedings consistent with this opinion.
 I.
This case stems from a letter authored during a separate case where the parties herein served as opposing counsel. Plaintiff Andrew J. Michaels, an attorney, represented a party who had sued clients of Defendants Carlile, Patchen Murphy (CPM) and Attorney Alan F. Berliner, the author of the subject letter. CPM employed Berliner. Brief summaries of that and the instant case follow.
 A. The DLZ Case
On February 6, 1995, John David Jones filed a lawsuit for defamation, naming as defendants DLZ Corporation (DLZ), its Chief Executive Officer, Vakrim Rajadhyaksha, and its Director of Finance, James May. Previously, Mr. Jones had served as the president of John David Jones Associates, whose contracts and employees had been acquired by DLZ and some of its officers to form JDJA. Mr. Jones also served briefly as president of JDJA. Mr. Rajadhyaksha and members of his family owned all the voting stock in newly formed JDJA, and he acted as its Chairman and Chief Executive Officer. In his complaint, Mr. Jones alleged he had been defamed and unjustly terminated as a result of comments made by Mr. Rajadhyaksha.
Mr. Jones was represented by Plaintiff in that action. Berliner and CPM were counsel for DLZ, Mr. Rajadhyaksha and Mr. May. On February 16, 1995, Berliner drafted a letter to Plaintiff, expressing concern over a possible conflict of interest that Plaintiff might have in his representation of Mr. Jones. Specifically, the letter referred to several cases and matters on which Plaintiff had allegedly worked and was still working on behalf of DLZ and JDJA. Defendants further suggested that Plaintiff had represented Defendants' clients and their clients' interests, that he had been exposed to their confidential information, and that he could now use that information against those clients through his position as opposing counsel. Finally, they threatened to file a motion to disqualify him from the case and seek costs and attorney fees for the motion if Plaintiff would not withdraw. When he refused, such a motion was filed, but ultimately denied.[1]
A copy of Berliner's letter was also delivered to Stephanie Jones. Ms. Jones, the daughter of Mr. Jones, succeeded her father and served as president of JDJA. While in that position, she regularly attended DLZ Executive Committee meetings and reported JDJA's activities to that committee.
 B. The Instant Case
Seven days after Berliner's letter had been mailed, on February 22, 1995, Plaintiff filed a complaint in the Summit County Common Pleas Court, claiming that Defendants Berliner and CPM had defamed him by sending the letter to Ms. Jones.[2] He also alleged that Berliner maliciously made false statements in the letter regarding Plaintiff's purported conflicts, "knowing full well that the economic circumstances of [Mr. Jones] would not permit him" to retain other counsel.
On October 23, 1995, Defendants moved for summary judgment, asserting, among other things, that Plaintiff's claim for libel was barred by the doctrine of absolute privilege. In essence, they claimed that the letter was privileged because it was delivered to individuals with a direct interest in the suit during the regular course of a judicial proceeding. The trial court agreed, and on May 7, 1996, granted Defendants' motion. Plaintiff successfully appealed to this Court. On April 9, 1997, this Court reversed the trial court's order, holding that while Berliner's letter was in the regular course of preparing for a judicial proceeding and pertinent to the relief sought, a genuine issue of material fact remained as to whether Ms. Jones had a direct interest in the DLZ Case. See, generally, Michaels v. Berliner (1997), 119 Ohio App.3d 82, 87-90.
On remand, the trial court granted Defendants' motion for leave to file a motion for summary judgment. After briefing the issue and the submission of new evidence, the trial court again granted summary judgment in favor of Defendants, ruling that Ms. Jones had a direct interest in the DLZ Case. Plaintiff timely appealed, asserting six assignments of error.[3] After setting forth the appropriate standard of review and legal authority, this Court will address each party's arguments.
 II. A. Summary Judgment Standard
In reviewing a trial court's ruling on a motion for summary judgment, an appellate court's examination is de novo. Stated another way, this Court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826,829. A party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293-294; Vahila v. Hall
(1997), 77 Ohio St.3d 421, 429. Once a party has satisfied this incipient burden, a reciprocal burden arises upon the nonmoving party to respond and set forth specific facts showing that there is a genuine issue of material fact for trial. Dresher, 75 Ohio St.3d at 293; Vahila,77 Ohio St.3d at 429.
 B. Defamation and Absolute Privilege
In order to establish a claim for libel, i.e. written defamation, a plaintiff must demonstrate the following elements: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and, (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Akron-Canton Waste Oil,, Inc. v. Safety-Kleen OilServ., Inc. (1992) 81 Ohio App.3d 591, 601. If a publisher is privileged in his or her actions, no claim for libel will lie.
The long-standing doctrine of absolute privilege, which was applied in English cases as far back as five-hundred years ago, "originally developed to protect statements made in `legislative proceedings, judicial proceedings, official acts of the executive offices of state or nation and acts done in the exercise of military or naval authority.'"Michaels, 119 Ohio App.3d at 87. See, also, Hayden, Reconsidering the Litigator's Absolute Privilege to Defame (1993), 54 Ohio St. L.J. 985, 985. "With respect to judicial proceedings, the privilege protects the integrity and reputation of the justice system by allowing persons involved in judicial proceedings to speak freely without fear of defamation suits against them. Thus, witnesses, parties, attorneys, and judges are protected while functioning as such in the usual and regular course of judicial proceedings." (Citations omitted.) Michaels,119 Ohio App.3d at 87. Indeed, statements made in a written pleading or brief, or in an oral statement to a judge or jury in open court, are absolutely privileged if they have some reasonable relation to the judicial proceeding in which they are made. See id., citing Surace v. Wuliger
(1986), 25 Ohio St.3d 229, syllabus, and Justice v. Mowery (1980),69 Ohio App.2d 75, 76.
However, as observed in Michaels, the privilege "does not give a personcarte blanche to defame another on the mere condition that a judicial proceeding is mentioned in, or somehow connected to, the defamatory statement." 119 Ohio App.3d at 87-88. Extrajudicial communications, those statements not submitted as evidence, as a pleading, during oral argument or in any other court document, require closer examination. To come within the privilege, an extrajudicial communication must be: (1) made in the regular course of preparing for or conducting such a proceeding; (2) pertinent and material to the redress or relief sought; and, (3) published only to persons who are directly interested in the proceeding. Id. at 88, citing Theiss v. Scherer (C.A.6, 1968), 396 F.2d 646, 648, and Postv. Mendel (Pa. 1986), 507 A.2d 351, 355-356.
This Court previously determined that Berliner's letter had been made in the regular course of preparing for a proceeding and was pertinent to the redress he sought on behalf of DLZ. Id. Thus, the only issue on remand and presently before this Court is whether Defendants established that no genuine issue of material fact existed as to the third element of the Michaels test and whether, as a matter of law, Ms. Jones, as president of JDJA and a minor shareholder in DLZ, had a direct interest in the litigation between her father and DLZ, Mr. Rajadhyaksha and Mr. May. This Court holds that they failed to so demonstrate.
Defendants have argued that the material facts in this case are undisputed and that, as a matter of law, Ms. Jones had a direct interest in the DLZ Case. They have offered the following particulars: (1) Mr. Rajadhyaksha and members of his family owned all the voting stock of JDJA, and DLZ owned all the non-voting stock of JDJA, (2) Mr. Jones' claims in the DLZ Case each arose from his prior employment, contractual relations and financial dealings while president of JDJA, (3) during her tenure as executive vice president and president of JDJA, Ms. Jones was directly responsible for the company's "day-to-day management" and reported directly to Mr. Rajadhyaksha and members of the DLZ Executive Committee; (4) she regularly attended DLZ Executive Committee meetings; and, (5) she owned a small amount of stock in DLZ. Defendants have asserted that, collectively, these five undisputed facts can lead reasonable minds but to one conclusion, to wit: Ms. Jones had a direct interest in the DLZ Case, warranting the delivery of Berliner's letter to her.
In response, Plaintiff has challenged Defendants' legal arguments, claiming that each of Defendants' facts support the conclusion that Ms. Jones had only an indirect interest in the underlying matter.[4]
Interestingly, Plaintiff has not argued that a genuine issue of material fact existed on any one of the five enumerated material claims advanced by Defendants.[5] Specifically, when answering their claim that JDJA and Ms. Jones, as president of JDJA, had a direct interest in the DLZ Case, Plaintiff has pointed to the glaring fact that JDJA was never made a party to that action. He has also maintained that simply because JDJA was a wholly owned subsidiary of parties in that case, to wit: DLZ and Mr. Rajadhyaksha, JDJA's interest in the DLZ Case could be classified as indirect at best. Next, Plaintiff has claimed that Ms. Jones' mere attendance at DLZ Executive Committee meetings is inconsequential. Finally, he has asserted that Ms. Jones' status as a shareholder does not give rise to a direct interest in the DLZ Case.
After reviewing the arguments and evidence submitted in support of those specific points, this Court concludes that, for the purposes of applying the doctrine of absolute privilege, the trial court erred as a matter of law by holding that Ms. Jones had a direct interest in the DLZ Case. At most, Ms. Jones had several indirect interests in that proceeding. Mr. Jones' claims did arise from his employment with JDJA, the company Ms. Jones managed. She was the president of a company owned by parties to the DLZ Case. This is not to say that Ms. Jones had a direct stake in the litigation between her father and DLZ, Mr. Rajadhyaksha and Mr. May. Indeed, she had not been named a party to that suit, nor had JDJA, the company which she managed. She was only a minor shareholder of DLZ and wielded no management authority with that organization. While she regularly attended its Executive Committee meetings, the record indicates that she was present only as a guest. The sum of the foregoing facts, or any lesser combination thereof, cannot be held to be greater than its whole. The circumstances presented in this case are insufficient to accord Ms. Jones a direct interest in the DLZ Case, justifying the imposition of an absolute privilege for Defendants. In conclusion, while the letter in question was executed in relation to a judicial proceeding, the publication of that letter to an individual who was without a direct interest in the same is not absolutely privileged. Plaintiff's arguments to that end are well taken.
 III.
Plaintiff's first, second, third and fourth assignments of error are sustained. The judgment of the trial court is reversed, and the cause remanded for proceedings consistent with this decision.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellees.
Exceptions.
 ___________________________ BETH WHITMORE
BATCHELDER, P. J., BAIRD, J., CONCUR
[1] Defendants also filed a complaint with the Office of the Ohio Disciplinary Counsel, alleging several ethical violations by Plaintiff. That Office declined to entertain the complaint because the litigation remained pending.
[2] The complaint also alleged attempted extortion, but the issue was not addressed by the trial court nor has it been raised in this appeal. Nevertheless, this Court retains jurisdiction as the court below certified its decision pursuant to Civ.R. 54(B).
[3] Plaintiff's first, second, third and fourth assignments of error have been consolidated. This Court declines to address the remaining assignments of error, pursuant to App.R. 12(A)(1)(c).
[4] Plaintiff has also asserted that the letter was mailed to Ms. Jones because she was Mr. Jones' daughter, hoping that after reading the letter she would encourage her father to have Plaintiff withdraw from the DLZ Case, thus, giving Defendants a tactical advantage as Mr. Jones' would be unable to afford other competent counsel. This point is not well taken. When held applicable in a given case, the doctrine of absolute immunity protects an individual from a claim for defamation irrespective of occasion or motive in publishing the statement, his or her belief in its truth or knowledge of its falsity. See Agriss v. Roadway Express, Inc.
(Pa.Super. 1984), 483 A.2d 456, 463; see, also, Restatement of the Law 2d, Torts (1977), Section 586, comment a.
[5] In his first assignment of error, Plaintiff did assert that a genuine issue of material fact existed as to whether Ms. Jones was on DLZ's Executive Committee, but Defendants have conceded that she did not serve on that body.