[Cite as *Savoy v. Univ. of Akron*, 2013-Ohio-5928.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ALAN SAVOY

   Plaintiff

   v.

THE UNIVERSITY OF AKRON

   Defendant

Case No. 2010-11285

Judge Patrick M. McGrath
Magistrate Anderson M. Renick

DECISION

{¶ 1} On July 10, 2012, the court issued an entry which granted defendant's motion for partial judgment on the pleadings and dismissed plaintiff's claims based upon alleged violation of his constitutional rights. On May 15, 2013, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). On June 10, 2013, plaintiff filed a response.[1] On June 11, 2013, plaintiff filed his affidavit. On June 17, 2013, defendant filed a reply to plaintiff's response and a motion for leave to file the same. Defendant's motion for leave is GRANTED. The motion for summary judgment is now before the court for a non-oral hearing.

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that

---

[1]Plaintiff's June 5, 2013 motion for an extension of time until June 10, 2013, to respond to defendant's motion is GRANTED.

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing Temple v. Wean United, Inc., 50 Ohio St.2d 317 (1977).

{¶ 4} In April 2008, plaintiff was an undergraduate student at defendant the University of Akron (UA). On or about April 25, 2008, plaintiff entered Buchtel Hall on UA's campus and spoke with John Case, Vice President of Finance and Administration. Another UA administrator, Angelo G. Monaco, was present during at least a part of the conversation between plaintiff and Dr. Case. There is no dispute that at some point during the conversation, plaintiff called Dr. Case "a liar," and then left the building. Both Dr. Case and Monaco were concerned by plaintiff's behavior which they considered rude and disruptive, and they subsequently reported the incident to the UA police department.

{¶ 5} Defendant submitted the affidavit of UA Assistant Police Chief James Weber, who avers that he received an incident report from Dr. Case wherein plaintiff's conduct was described as angry and profane. Chief Weber states that, later that afternoon, he and Officer Beal responded to Simmons Hall after learning that plaintiff had entered the registrar's office. According to Chief Weber, the officers discovered that plaintiff had two outstanding warrants for his arrest from the city of Akron. Chief Weber states that although UA's police department legal advisor determined that there was not sufficient evidence to arrest plaintiff for disorderly conduct or criminal trespass related to the Buchtel Hall incident, plaintiff was arrested pursuant to the active warrants. (Defendant's Exhibit A, ¶ 6-7.) Plaintiff was given a summons for the warrants and a trespass warning to stay out of Buchtel Hall. (Defendant's Exhibit D.) Officer Beal issued a notice referring plaintiff to UA's Student Judicial Affairs (SJA) for the Buchtel Hall incident. (Defendant's Exhibits D and E.)

{¶ 6} Defendant also submitted the affidavit of Dale Adams, the Director of UA's SJA department. (Defendant's Exhibit F.) Adams avers that the SJA office received the student referral notice on April 28, 2008, and that he sent plaintiff a letter explaining the alleged violation and notifying him that a "fact finding meeting" had been scheduled for May 12, 2008. (Defendant's Exhibit F, ¶ 2-4.) According to Adams, he met with plaintiff to discuss the alleged violations, and during the meeting, plaintiff signed a document acknowledging that he received a copy of a brochure which explained his rights under the Student Code of Conduct. Plaintiff was also informed that the case had been scheduled for review by a hearing board on May 16, 2008.

{¶ 7} At the hearing, both Adams and plaintiff presented evidence and plaintiff had the opportunity to question witnesses. As a result of the hearing, plaintiff was found "responsible" for one violation of the Student Code of Conduct; disorderly conduct or lewd, indecent or obscene conduct on the university premises. (Defendant's Exhibit J.) The hearing board placed plaintiff on disciplinary probation for the duration of his undergraduate education and required that he attend an anger-management assessment by July 15, 2008. Plaintiff was also required to schedule an appointment prior to any visit to Buchtel Hall. At plaintiff's request, the decision of the hearing board was reviewed by the UA Appeal Board and on June 12, 2008, plaintiff was notified by letter that the hearing board's decision was upheld. (Defendant's Exhibit M.)

{¶ 8} On July 16, 2008, plaintiff was notified by the director of UA's Student Judicial Affairs office that a "hold" had been placed on his student record as a result of his failure to comply with the sanction of attending an anger-management assessment. (Defendant's Exhibit N.) According to Adams, on or about September 17, 2008, the hold on his account was lifted after SJA received a September 13, 2008 letter confirming that plaintiff had completed his anger-management assessment. Adams avers that UA and the SJA office complied with the UA policies and procedures that were in effect at the time of the disciplinary proceedings.

{¶ 9} Plaintiff asserts claims for false arrest, abuse of process, malicious prosecution, defamation, and breach of contract.[2] Although plaintiff has alleged various

---

[2]The court notes that the Tenth District Court of Appeals has previously determined that plaintiff's complaint states claims for false arrest, defamation and breach of contract. *Savoy v. The University of Akron*, 10th Dist. No. 11AP-188, 2012-Ohio-1962, ¶ 2. Plaintiff now asserts that his complaint states

claims, the gravamen of his complaint is that defendant committed a breach of the terms of its contract with him both by charging him with violations of UA's Student Code of Conduct and by issuing sanctions as a result of the outcome of the SJA proceedings.

**BREACH OF CONTRACT**

{¶ 10} Plaintiff alleges that defendant interfered with his contractual right to register for UA classes and that defendant failed to comply with its policies during the SJA proceedings. It is well-settled that the relationship between a college and a student who enrolls, pays tuition, and attends class is contractual in nature, and that the terms of this contractual relationship may be found in the handbook, catalog, and other guidelines supplied to students. *Bleicher v. Univ. of Cincinnati College of Med.*, 78 Ohio App.3d 302, 308 (1992); *Embrey v. Central State Univ.*, 10th Dist. No. 90AP-1302 (Oct. 8, 1991), citing *Smith v. Ohio State Univ.*, 53 Ohio Misc.2d 11, 13 (1990). In addressing an alleged breach of such contract, a trial court is required to defer to academic decisions of a college unless it is perceived that there existed "'such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.'" *Bleicher, supra*, at 308, quoting *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985). The standard of review is not merely whether the court would have decided the matter differently but whether the faculty action was arbitrary and capricious. *Bleicher, supra*.

{¶ 11} A copy of the relevant sections of the Student Code of Conduct is attached to Adams' affidavit. UA's Student Code of Conduct regarding investigation for student misconduct clearly provides for the fact finding and hearing process that occurred as a result of the incident in Buchtel Hall. There is no doubt that plaintiff was provided with notice of the disciplinary process and an opportunity to explain his involvement during both the fact finding process and the subsequent hearing. Plaintiff was provided a hearing in accordance with the student handbook and was subsequently sanctioned by defendant for violations of the standards of conduct. In his affidavit, Adams states that

---

additional claims for abuse of process and malicious prosecution. Although the court finds that plaintiff has waived any additional claims that were not addressed on appeal, the court will nevertheless address the newly asserted claims.

UA and the SJA followed all policies and procedures in plaintiff's disciplinary process. Plaintiff has not provided any credible evidence to rebut Adams' statement.

{¶ 12} Although plaintiff states in his affidavit that the SJA board reached the wrong decision based upon false statements by Dr. Case and Monaco and that he was not provided with adequate time to prepare for the hearing, he has not provided any evidence to show that defendant violated either the Student Code of Conduct or any other contractual provision. "Generally, a party's unsupported and self-serving assertions, offered by way of affidavit, standing alone and without corroborating materials under Civ.R. 56, will not be sufficient to demonstrate material issues of fact. Otherwise, a party could avoid summary judgment under all circumstances solely by simply submitting such a self-serving affidavit containing nothing more than bare contradictions of the evidence offered by the moving party." *Bell v. Beightler*, 10th Dist. No. 02AP-569, 2003-Ohio-88, ¶ 33; *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 170, 1997-Ohio-219.

{¶ 13} Under the circumstances, a reasonable trier of fact could not possibly find that the hearing board failed to exercise professional judgment in making the decision to impose academic sanctions based upon the finding that plaintiff committed a violation of the Student Code of Conduct. Therefore, defendant is entitled to judgment on plaintiff's breach of contract claim, as a matter of law.

**FALSE ARREST**

{¶ 14} "False arrest developed as a tort akin to trespass and criminal conversation, requiring no evil intent but merely an intrusion into a protected right." *Harvey v. Horn*, 33 Ohio App.3d 24, 27 (1986). "The essence of the tort of false arrest is the depriving of a person of his or her liberty without lawful justification. Specifically, a plaintiff must show only that he or she was detained and that the detention was unlawful. The tort does not require proof of malice, motive or lack of probable cause." *Id.* Although the tort of false arrest does not require proof of a lack of probable cause, "the issue of probable cause remains significant in a false arrest case because its existence renders the arrest lawful." *Hinkle v. Columbus*, 10th Dist. No. 04AP-1195, 2006-Ohio-1522, ¶ 20.

{¶ 15} Plaintiff alleges that he was falsely arrested by Chief Weber and Officer Beal inasmuch as his arrest was the result of false reports by Dr. Case and Monaco. However, the evidence shows that plaintiff was arrested based upon outstanding warrants that were issued by the city of Akron. To the extent that plaintiff contends Chief Weber relied upon "hearsay" witness statements when he initiated the investigation that resulted in plaintiff's arrest on outstanding warrants, the court notes that such statements are not hearsay inasmuch as they merely explain why Chief Weber had a duty to contact plaintiff; the statements were not offered for the truth of the matter asserted. Although plaintiff states in his affidavit that he believes Officer Beal added a reference to the warrants in his incident report after the arrest, plaintiff does not contest the validity of the warrants and the timing of such notation does not conflict with Chief Weber's statement that the arrest was based upon the warrants. Consequently, there is no question that defendant's officers had a lawful justification to detain plaintiff and issue him a citation for the outstanding warrants. Accordingly, plaintiff's claim of false arrest is without merit.

**ABUSE OF PROCESS**

{¶ 16} Three elements must be satisfied to establish a claim of abuse of process: "(1) a legal proceeding has been set in motion in proper form and with probable cause, (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed, and (3) direct damage has resulted from the wrongful use of process." *Cantrell v. Deitz*, 10th Dist. No. 12AP-357 (Mar. 28, 2013); *Sports Facilities Dev. II, Ltd. v. Lane, Alton & Horst*, 10th Dist. No. 10AP-591, 2011-Ohio-3650, ¶ 8.

{¶ 17} The proceeding at issue is the SJA finding of fact and hearing which was held pursuant to UA's Student Code of Conduct. The court is not persuaded that the SJA proceeding was a "legal proceeding" which would satisfy the first element of plaintiff's abuse of process claim. Moreover, for the reasons stated above, and construing the evidence most strongly in plaintiff's favor, the court finds that reasonable minds can only conclude that the proceeding was not perverted to attempt to accomplish an ulterior purpose for which it was not designed. As discussed above, plaintiff's self-serving statement that he was not provided adequate time to prepare for

the hearing does not rebut the uncontroverted evidence that defendant followed all policies and procedures during the disciplinary process. Adams and the SJA hearing board had the opportunity to consider plaintiff's statements and plaintiff had the opportunity question witnesses and present additional evidence. The court will not substitute its judgment for that of the hearing board.

**MALICIOUS PROSECUTION**

{¶ 18} The elements of a cause of action for malicious civil prosecution are: (1) malicious institution of prior proceedings against the plaintiff by the defendant; (2) lack of probable cause for the filing of the prior lawsuit; (3) termination of the prior proceedings in plaintiff's favor; and (4) seizure of the plaintiff's person or property during the course of the prior proceedings. *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264, 1996-Ohio-189, syllabus. Similarly, the elements of the tort of malicious criminal prosecution are: (1) malice in instituting or continuing a criminal prosecution; (2) lack of probable cause to support that prosecution; and (3) termination of the prosecution in favor of the accused. *Froehlich v. Ohio Dept. of Mental Health*, 114 Ohio St.3d 286, 2007-Ohio-4161, ¶ 10, citing *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 146 (1990).

{¶ 19} Plaintiff does not state whether he is asserting a claim based on malicious civil or criminal prosecution. Regardless, plaintiff's complaint does not contain any factual allegations to support either cause of action. With regard to civil prosecution and the SJA hearing, as stated above, the SJA proceedings were conducted pursuant to the parties' contractual relationship. Furthermore, there was a finding of probable cause to refer the matter to the hearing board, and plaintiff was subsequently found to have violated the Student Code of Conduct. As to a claim of malicious criminal prosecution, although the UA police incident report referenced disorderly conduct and criminal trespass based upon the statements by Dr. Case and Monaco, the evidence shows that criminal charges were never filed against plaintiff. Inasmuch as a criminal prosecution was not instituted, plaintiff's claim of malicious criminal prosecution is without merit.

**DEFAMATION**

{¶ 20} Defamation, which includes both libel and slander, is a false publication causing injury to a person's reputation, exposing the person to public hatred, contempt, ridicule, shame or disgrace, or affecting the person adversely in his or her trade or business. *Sweitzer v. Outlet Communications, Inc.*, 133 Ohio App.3d 102, 108 (1999). In an action for defamation, plaintiff's prima facie case is made when he has established a publication to a third person for which defendant is responsible, the recipient's understanding of the defamatory meaning, and its actionable character. *Hahn v. Kotten*, 43 Ohio St.2d 237, 243 (1975). Whether words are defamatory is a question of law to be decided by the court. *Vail v. Plain Dealer Publishing Co.*, 72 Ohio St. 3d 279, 280, 1995-Ohio-187. Absent a "publication" of some sort, made by defendant, plaintiff cannot establish a prima facie case of defamation. *Froehlic v. Ohio Dept. of Mental Health*, 123 Ohio Misc.2d 1, 2003-Ohio-1277.

{¶ 21} Plaintiff states in his affidavit that, although he called Dr. Case a liar, he did not raise his voice, use profanity, or make any threatening gestures during the Buchtel Hall incident. Despite plaintiff's claims that Dr. Case and Monaco made false statements concerning his conduct in Buchtel Hall, he does not specify which accusations are false and defamatory, or how such statements were published. To the extent that plaintiff contends that defendant published defamatory statements in documents that were filed in a related action the Summit County Court of Common Pleas, it is well-settled that "[s]tatements made 'in a written pleading or brief, or in an oral statement to a judge or jury in open court, is absolutely privileged if it has some reasonable relation to the judicial proceeding in which it appears.'" *Morrison v. Gugle*, 142 Ohio App. 3d 244, 259 (10th Dist.2001), quoting *Michaels v. Berliner*, 119 Ohio App. 3d 82, 87 (1997). "Applicability of absolute privilege is a question of law." *Id.*

{¶ 22} As stated above, even if plaintiff's version of the events at Buchtel Hall were proved to be true, statements made to UA police were not the basis for his arrest. The officers were acting in good faith when they referred the matter to the SJA for consideration. There is no evidence upon which a reasonable person could conclude that the alleged statements were either false or defamatory. Accordingly, the court finds that plaintiff failed to establish a prima facie case of defamation.

{¶ 23} Moreover, even if plaintiff were to establish a prima facie case of defamation, the defense of privilege would apply to shield defendant from liability. In the context of a defamation claim, the defense of privilege applies to statements that are "made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *Hahn v. Kotten*, 43 Ohio St.2d 237, 244 (1975). "Private citizens are qualifiedly privileged to give information to proper government authorities for the prevention or detection of crime." *Paramount Supply Co. v. Sherlin Corp.*, 16 Ohio App.3d 176 (1984), paragraph two of the syllabus. A qualified privilege "can be defeated only by a clear and convincing showing that the communication was made with actual malice." *Jacobs v. Frank*, 60 Ohio St.3d 111 (1991), paragraph two of the syllabus. "'[A]ctual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Id*.

{¶ 24} There is no doubt that statements made by defendant's employees were made pursuant to their duties as UA employees, were properly communicated in a limited scope to UA police and other employees of defendant, and were made in good faith by properly interested persons. Inasmuch as plaintiff has not provided proof of actual malice, the court concludes that the statements were protected by a qualified privilege.

{¶ 25} For the foregoing reasons, and construing the facts most strongly in plaintiff's favor, the court finds that there is no genuine issue as to any material fact and that defendant is entitled to summary judgment as a matter of law. Accordingly, defendant's motion for summary judgment shall be granted and judgment shall be rendered in favor of defendant.

_____
PATRICK M. MCGRATH
Judge



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ALAN SAVOY

    Plaintiff

    v.

THE UNIVERSITY OF AKRON

    Defendant

Case No. 2010-11285

Judge Patrick M. McGrath
Magistrate Anderson M. Renick

JUDGMENT ENTRY

{¶ 26} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
PATRICK M. MCGRATH
Judge

cc:

Amy S. Brown
Jeanna R. Volp
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Peter D. Traska
P.O. Box 609306
Cleveland, Ohio 44109

004
Filed July 10, 2013
Sent to S.C. Reporter April 30, 2014