OPINION
{¶ 1} Plaintiff, Walter Hinkle, and defendant, Columbus Police Officer Charles McCoy, appeal from a judgment of the Franklin County Court of Common Pleas in favor of plaintiff and against Officer McCoy as to plaintiff's false arrest claim, and in favor of Columbus Police Officers McCoy, Chris Billman, Chris Burich, Ky Reed and Heidi Malone, and against plaintiff, as to plaintiff's assault and battery claim. For the following reasons, we affirm in part and reverse in part the judgment of the trial court.
 {¶ 2} This case arises from an incident that occurred on November 21, 2001. During the evening on that date, plaintiff was drinking at a bar, Dirty Dungarees, in Columbus. At some point that evening, the Columbus Police were dispatched to the bar upon receiving a report of a disturbance. The police arrived at the scene, and ultimately arrested plaintiff. The circumstances surrounding the arrest are in dispute. Plaintiff was charged with criminal trespass, disorderly conduct, and resisting arrest. At some point in time, these charges were apparently dismissed.
 {¶ 3} On October 3, 2002, plaintiff filed an amended complaint in the Franklin County Court of Common Pleas against the City of Columbus and Police Officers McCoy, Burich, Billman, Malone, and Reed. Plaintiff alleged, inter alia, assault and battery, false arrest, and malicious prosecution. Defendants removed the case to the United States District Court for the Southern District of Ohio. Finding no basis for federal jurisdiction appearing on the face of the complaint, the federal district court remanded the case to the Franklin County Court of Common Pleas on May 14, 2003. On October 29, 2003, plaintiff filed a notice of voluntary dismissal of defendant City of Columbus.
 {¶ 4} At the end of June, and beginning of July, 2004, this matter was tried to a jury. Numerous witnesses testified at trial regarding the circumstances surrounding plaintiff's arrest at Dirty Dungarees.
 {¶ 5} Plaintiff's testimony at trial indicated as follows. On the evening of November 21, 2001, plaintiff and a friend, Adrian McCoy, went to Dirty Dungarees to have a beer. At some point, plaintiff sat down at a table with Carol Williams and Lataria Jojola. While he was sitting with them, Officer Burich approached him and asked him whether he was causing trouble, and plaintiff responded that he was not causing any trouble. Officer Burich indicated to plaintiff that he thought he was causing trouble. Officer McCoy looked at Officer Burich and asked him what was happening. Officer Burich responded by stating that plaintiff was the person causing trouble. Plaintiff was asked for identification, and plaintiff asked why he needed to produce it. Other patrons at the bar informed the police that plaintiff was merely sitting at the table.
 {¶ 6} Plaintiff was escorted out of the bar by the police. A struggle ensued, and plaintiff and the officers fell through a doorway and down steps outside the bar. According to plaintiff, Officer Burich spit in his face, and he was encouraged to hit the officer. Plaintiff testified that Officer Burich kicked him in the groin and hit him in the stomach. Plaintiff testified that the officers repeatedly kicked and hit him. Plaintiff was transported to the county jail in a police wagon. According to plaintiff's testimony, while he was in the wagon and being transported to jail, he was not properly secured by restraints, and the driver was purposely driving in an erratic manner so as to cause injury to plaintiff.
 {¶ 7} Carol Williams testified that plaintiff was not causing trouble on the evening of November 21, 2001, at Dirty Dungarees. Ms. Williams testified that, while she was seated with plaintiff, she did not hear a bar manager inform plaintiff that he needed to leave. According to Ms. Williams, as the police approached plaintiff, a barmaid at Dirty Dungarees, Johanna Shaffer, said to the police, "that's not him." (July 2, 2004, Tr. 92.) Also, according to Adrian Lowery, Ms. Shaffer said, "That's not the person. That's the wrong person." (Id. at 102.)
 {¶ 8} Officer McCoy's testimony at trial indicated as follows. On the evening of November 21, 2001, Officer McCoy received notification that there was a disturbance at Dirty Dungarees. The dispatch was a result of "a male refusing to leave." (July 6, 2004, Tr. 116.) Officer McCoy was the first to arrive at the scene. Upon his arrival, Officer McCoy spoke with Ms. Shaffer, the barmaid. Officer McCoy testified that she advised him that "she had someone else that she wanted removed from the bar." (Id. at 119.) According to Officer McCoy, he and Ms. Shaffer approached plaintiff. In his presence, Ms. Shaffer advised plaintiff to leave, and he refused. Because plaintiff refused to leave, Officer McCoy began to escort plaintiff out of the establishment. According to Officer McCoy, plaintiff broke free from his grip and grabbed the doorframe. Officer McCoy employed three or four "knee strikes" to the right side of plaintiff's thigh, which was a technique he learned in training, as a way to get plaintiff to release himself from the door frame. (Id. at 130.) Officer McCoy testified that he used force in an attempt to get plaintiff to stop resisting. As a result of the knee strikes, plaintiff released himself from the door, and he and the officers stumbled out the doorway and onto asphalt. Officer McCoy used additional techniques to subdue plaintiff. Namely, he placed plaintiff's head between his knees and applied pressure to his mandibular angle. Plaintiff was handcuffed, patted for weapons, and placed in the police wagon. Officer McCoy denied hitting or kicking plaintiff.
 {¶ 9} At trial, Officer Burich denied spitting in plaintiff's face. He also denied hitting or kicking plaintiff. Officer Billman also denied the allegations made by plaintiff in his testimony.
 {¶ 10} Ms. Shaffer's testimony at trial indicated as follows. Ms. Shaffer called the police on November 21, 2001, because a person known as "Dee" was at Dirty Dungarees, even though he was banned from the establishment. According to Ms. Shaffer, Dee had previously threatened her with a gun. Ms. Shaffer asked Dee to leave, but initially he refused. By the time the police arrived in response to the phone call, Dee had left. According to Ms. Shaffer, when the police arrived, she told them that plaintiff had been directed to leave the bar and he had refused. She sought the assistance of the police in removing plaintiff. At trial, Ms. Shaffer was asked whether she had told the officers, who approached plaintiff, that he was the wrong person. Ms. Shaffer answered, "[w]ell yeah. It was the wrong one. I had called it on Dee, but yeah." (July 1, 2004, Tr. 10.) Ms. Shaffer testified that, in the presence of the police, she told plaintiff to leave and he did not leave. Ms. Shaffer also testified regarding a letter she wrote nearly a month after the incident, wherein she requested that any charges against defendant relating to the incident be dropped. In sum, Ms. Shaffer's testimony essentially indicated that she had called the police as a result of the presence of Dee at the bar; however, once the police arrived at the bar, she decided to seek their assistance in removing plaintiff by informing Officer McCoy that plaintiff had been told to leave and that he refused.
 {¶ 11} At the conclusion of the trial, the jury found in favor of Officer McCoy as to plaintiff's claim of malicious prosecution; it found in favor of Officers Billman, Burich, McCoy, Reed, and Malone, as to plaintiff's claim of assault and battery; and it found in favor of Officers Billman and Burich, as to plaintiff's claim of false arrest. Additionally, the jury found in favor of plaintiff and against Officer McCoy as to plaintiff's claim of false arrest, and it awarded $6,200 in damages.
 {¶ 12} On July 22, 2004, Officer McCoy filed a motion for judgment notwithstanding the verdict ("JNOV") as to the false arrest claim. He argued that it was undisputed that Ms. Shaffer informed him that plaintiff had been notified to leave the premises and he failed or refused to leave. According to Officer McCoy, that provided probable cause for him to arrest plaintiff. In a memorandum contra, plaintiff argued that reasonable minds could come to different conclusions as to Officer McCoy's liability for false arrest. On September 3, 2004, the trial court filed a decision and entry overruling Officer McCoy's motion for JNOV. In overruling the motion, the trial court observed that "Shaffer's testimony involved contradictory claims regarding whether Plaintiff did anything wrong that night." (Sept. 3, 2004 Decision and Entry, at 5.)
 {¶ 13} Plaintiff appeals, and has asserted the following assignment of error:
THE JURY VERDICT FINDING THAT MCCOY, BURICH, AND BILLMAN WERE NOT LIABLE FOR ASSAULT AND BATTERY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 14} Officer McCoy also appeals and has set forth the following cross-assignment of error:
THE TRIAL COURT ERRED IN DENYING APPELLEE/CROSS-APPELLANT MCCOY'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
 {¶ 15} As a preliminary matter, we observe that, upon the submission of this case for our determination, the record included only a partial transcript of the proceedings in the trial court. The transcript included only the direct testimony of numerous witnesses, the complete testimony of one witness, and the discussion regarding defendants' motion for directed verdict.
 {¶ 16} Pursuant to App.R. 9(B), if an "appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, the appellant shall include in the record a transcript of all evidence relevant to the findings or conclusion." Furthermore, "[w]hen portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings and affirm." Knapp v. Edwards Laboratories
(1980), 61 Ohio St.2d 197, 199.
 {¶ 17} In their brief, at 8, Officers McCoy, Burich, and Billman, contend that "[a]ppellant's failure to include a complete transcript of the entire trial (the complete testimony of all the witnesses) deprives the Court of any basis on which to determine the sufficiency or manifest weight of the evidence, for which appellant has the burden of demonstrating error." This contention has merit. However, this argument seems to be just as applicable to Officer McCoy's assignment of error as to plaintiff's assignment of error. In his appeal, Officer McCoy has asserted that no evidence was presented at trial to contradict Ms. Shaffer's testimony that she told him that she had directed plaintiff to leave the bar, and that he refused.
 {¶ 18} In view of the assignments of error and the arguments raised thereunder, it is clear that the disposition of both assignments of error require a review of more than a partial transcript. In a November 2, 2005 journal entry, this court deemed a review of the full transcript necessary to the proper determination of this appeal. Thus, by order of this court, the record in this case was supplemented on February 7, 2006. The record now includes all testimony presented in the trial court.
 {¶ 19} For ease of discussion, we will first address Officer McCoy's cross-assignment of error. In his assignment of error, Officer McCoy argues that the trial court erred in denying his motion for JNOV. "A motion for judgment notwithstanding the verdict, like a motion for a directed verdict, tests the legal sufficiency of the evidence." Wright v. Suzuki Motor Corp.,
Meigs App. No. 03CA2, 2005-Ohio-3494, at ¶ 109, citing bothPosin v. A.B.C. Motor Court Hotel, Inc. (1976),45 Ohio St.2d 271, and McKenney v. Hillside Dairy Co. (1996),109 Ohio App.3d 164. The standard for reviewing a trial court's decision regarding a motion for JNOV is the same as that applicable to a motion for directed verdict. Nickell v. Gonzalez (1985), 17 Ohio St.3d 136, 137. The evidence is to be construed most strongly in favor of the non-movant, who is also given the benefit of all reasonable inferences from the evidence. Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68. The court must neither weigh the evidence nor the credibility of the witnesses. Osler v. Lorain (1986), 28 Ohio St.3d 345, syllabus. A motion for JNOV should be denied if there is substantial evidence upon which reasonable minds could come to different conclusions on the essential elements of the claim. Posin,
supra, at 275. Conversely, the motion should be granted where the evidence is legally insufficient to support the verdict. CountySavings Bank v. Sain (Apr. 21, 1992), Franklin App. No. 91AP-380.
 {¶ 20} The tort of false arrest involves depriving a person of his or her liberty without lawful justification. The plaintiff must only show that he or she was detained and that the detention was unlawful. Harvey v. Horn (1986), 33 Ohio App.3d 24, 27. This court has stated that the tort of false arrest does not require proof of a lack of probable cause. See id. at 27. However, the issue of probable cause remains significant in a false arrest case because its existence renders the arrest lawful.
 {¶ 21} In his motion for JNOV, Officer McCoy argued that he had probable cause to arrest plaintiff, and therefore he was not liable for false arrest. Officer McCoy argued that he had probable cause to arrest plaintiff for violating Columbus City Code 2311.21(A)(4), which provides: "No person, without privilege to do so, shall do any of the following: * * * (4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified to do so by the owner or occupant, or the agent or servant of either." Whoever violates Columbus City Code 2311.21 is guilty of criminal trespass, a misdemeanor of the fourth degree. Columbus City Code 2311.21(D)(1). "Probable cause to arrest a person for a misdemeanor exists when there are circumstances which would cause a reasonable person to believe that a crime had been committed in his presence." State v. Harn
(Aug. 20, 1987), Franklin App. No. 87AP-269.
 {¶ 22} In its decision, the trial court found that "Shaffer's testimony involved contradictory claims regarding whether Plaintiff did anything wrong that night," and overruled Officer McCoy's motion. However, a conclusion that there was a factual dispute as to whether plaintiff "did anything wrong that night" did not determine the issue of whether reasonable minds could reach different conclusions as to probable cause. As this court has previously noted, "the issue of probable cause is not dependent upon the `ultimate judicial determination of guilt or innocence, which is resolved on a reasonable doubt standard,' but whether the officer had "probable cause sufficient to authorize [the defendant's] arrest." State v. Zefi (Mar. 15, 2001), Franklin App. No. 00AP-950, quoting State v. Williams (Nov. 21, 1997), Montgomery App. No. 16306.
 {¶ 23} In the case at bar, it is undisputed that when Officer McCoy arrived at Dirty Dungarees he was informed by the barmaid that plaintiff had been told to leave and he refused. It is also undisputed that plaintiff was at Dirty Dungarees when Officer McCoy arrived. Thus, the information before Officer McCoy at the time of the arrest would cause a reasonable person to believe that plaintiff was continuing to criminally trespass.
 {¶ 24} Notwithstanding that undisputed evidence, plaintiff sets forth arguments regarding whether the barmaid told plaintiff to leave. Plaintiff's arguments to the contrary, that issue is not necessarily probative of the officer's perception, even though it would be pertinent to whether plaintiff in fact committed criminal trespass. Moreover, we note that the "wrong one" statement by Ms. Shaffer was in regard to the person she originally called the police about, and did not negate the fact that she told the police that she had asked plaintiff to leave and he refused. Additionally, Ms. Shaffer's note, written nearly a month after the incident did not dispute what she had told Officer McCoy upon his arrival at the bar.
 {¶ 25} Upon our thorough review of the record, we find that reasonable minds could only come to one conclusion, that Officer McCoy had probable cause to arrest plaintiff. Therefore, we conclude that the trial court erred in denying Officer McCoy's motion for JNOV. Accordingly, we sustain Officer McCoy's cross-assignment of error.
 {¶ 26} By his sole assignment of error, plaintiff argues that the jury verdict finding Officers McCoy, Burich, and Billman not liable for assault and battery is against the manifest weight of the evidence. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, syllabus.
 {¶ 27} Specifically, plaintiff argues that, considering the evidence presented at trial, there is no doubt that Officers McCoy, Burich, and Billman should be liable to plaintiff for assault and battery. Plaintiff also argues that the jury lost its way because it found Officer McCoy liable for false arrest, but did not find in favor of him as to his assault and battery claims. Finally, plaintiff asserts that Officers McCoy, Burich, and Billman admitted to conduct that constitutes assault and battery. In this regard, plaintiff cites to testimony of Officer McCoy in which he stated that he "grabbed * * * Hinkle by his left arm, or his right arm * * * and started to escort him out." (July 6, 2005 Tr. 122.) Plaintiff also cites to Officer McCoy's admission that he struck plaintiff on his thigh.
 {¶ 28} Again, we note that Officer McCoy had probable cause to arrest plaintiff. Moreover, aside from Officer McCoy conceding that he utilized "knee strikes" in order to get plaintiff to stop resisting, plaintiff's allegations at trial that he was spit at, kicked, or otherwise hit by police officers were disputed by officer testimony at trial. Based on our thorough review of the record, we cannot conclude that the jury verdict finding Officers McCoy, Burich, and Billman not liable for assault and battery is against the manifest weight of the evidence. Considering the foregoing, we overrule plaintiff's sole assignment of error.
 {¶ 29} Having overruled plaintiff's sole assignment of error and sustained Officer McCoy's sole cross-assignment of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, and remand this matter to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part and reversed in part; causeremanded.
McGrath and McCormac, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.